Nancy Kathleen PRINCE,
Plaintiff-Appellant/Cross-Appellee,

v.

LEESONA CORPORATION, INC.,
Defendant-Appellee/Cross-Appellant.

Nos. 81–1962, 81–1985.

United States Court of Appeals,
Tenth Circuit.

Nov. 7, 1983.

William H. Pickett of Kansas City, Mo., for plaintiff-appellant/cross-appellee.

Keith Martin of Payne & Jones, Chartered, Olathe, Kan., for defendant-appellee/cross-appellant.

Before DOYLE, BREITENSTEIN and McKAY, Circuit Judges.

McKAY, Circuit Judge.

This diversity action against an equipment manufacturer[1] for personal injuries occurring on the job in which plaintiff, Ms. Prince, caught her hair in the rotating shaft of her employer's machine is based on the theory of products liability. It was first filed in Missouri before the two-year statute of limitations expired but was dismissed by the district court for Missouri for lack of personal jurisdiction after the two years' limitation period expired. It was refiled in Kansas within six months thereafter. Plaintiff's employer, who is immune from liability under the Kansas worker's compensation law, was not named as a defendant but was added by the court as a "phantom" party. In order to reach a judgment the jury was required to allocate among all the actors, including plaintiff's employer, their appropriate share of fault in causing the injury. The jury found plaintiff's damages to be $200,000 and allocated fault as follows:

Plaintiff—35%

Defendant manufacturer—5%

C.M. Moore Company (plaintiff's employer)—60%

---

1. Cumberland Engineering Company, Inc. was merged into Leesona (the manufacturer) in 1976. Cumberland was named as a defendant but is not a party to this appeal.

■ Thus plaintiff's net recovery against the defendant was $10,000.[2]

Plaintiff has appealed on a variety of issues, most of which involve the interpretation of the Kansas Comparative Negligence Act as applied to the doctrine of strict liability. Defendant has cross-appealed on a jurisdictional issue and on the issue of whether, as a matter of law, the negligence of C.M. Moore was a superseding cause under the doctrine of shifting responsibility. It is necessary to address the jurisdictional issue first.

Defendant contends that plaintiff's action is barred by Kansas' two-year statute of limitations for personal injury in tort. Kan.Stat.Ann. § 60–513(a)(2) (1976). When plaintiff originally filed the action in Missouri, she was within the two-year time period. The Missouri action was dismissed after the two years had run. The action was refiled in Kansas two years, five months after the accident. The issue is whether the Kansas savings statute applies. That statute provides that "[i]f any action be commenced within due time, and the plaintiff shall fail in such action otherwise than upon the merits, and the time limited for the same shall have expired, the plaintiff ... may commence a new action within six (6) months after such failure." Kan. Stat.Ann. § 60–518 (1976).

Defendant argues that the statute applies only when the first action is filed in the forum state.[3] Although Kansas has not directly decided the issue, defendant cites the dictum of *Jackson v. Prairie Oil & Gas,* 115 Kan. 386, 391, 222 P. 1114, 1116 (1924), in which the Kansas Supreme Court noted that the rule of *Herron v. Miller,* 96 Okl. 59, 220 P. 36 (1923), appeared to be well taken. The rule of *Herron*—that the forum's savings statute does not apply when the initial action is brought in another state—is the general rule among older cases.[4] More recently, however, both cir-

---

**2.** The Kansas Comparative Negligence Act provides:

(a) The contributory negligence of any party in a civil action shall not bar such party or said party's legal representative from recovering damages for negligence resulting in death, personal injury or property damage, if such party's negligence was less than the causal negligence of the party or parties against whom claim for recovery is made, but the award of damages to any party in such action shall be diminished in proportion to the amount of negligence attributed to such party. If any such party is claiming damages for a decedent's wrongful death, the negligence of the decedent, if any, shall be imputed to such party.

(b) Where the comparative negligence of the parties in any such action is an issue, the jury shall return special verdicts, or in the absence of a jury, the court shall make special findings, determining the percentage of negligence attributable to each of the parties, and determining the total amount of damages sustained by each of the claimants, and the entry of judgment shall be made by the court. No general verdict shall be returned by the jury.

(c) On motion of any party against whom a claim is asserted for negligence resulting in death, personal injury or property damage, any other person whose causal negligence is claimed to have contributed to such death, personal injury or property damage shall be joined as an additional party to the action.

(d) Where the comparative negligence of the parties in any action is an issue and recovery is allowed against more than one party, each such party shall be liable for that portion of the total dollar amount awarded as damages to any claimant in the proportion that the amount of his or her causal negligence bears to the amount of the causal negligence attributed to all parties against whom such recovery is allowed.

(e) The provisions of this section shall be applicable to actions pursuant to this chapter and to actions commenced pursuant to the code of civil procedure for limited actions. Kan.Stat.Ann. § 60–258a (1976).

Further, Kansas law allows plaintiff to aggregate the fault of all defendants in determining whether a plaintiff's negligence is less than the negligence of the defendants. *See Negley v. Massey Ferguson, Inc.,* 229 Kan. 465, 625 P.2d 472 (1981). We conclude that the Kansas court would apply this aggregation doctrine to phantom as well as named parties.

**3.** Defendant contended below that the action in Missouri was never "commenced" but was void because there was no personal jurisdiction. The trial court rejected this argument and on appeal defendant has abandoned the theory.

**4.** *See, e.g., Riley v. Union Pac. R.,* 182 F.2d 765 (10th Cir.1950); *DeLuca v. Atlantic Refining Co.,* 176 F.2d 421 (2d Cir.1949), *cert. denied,* 338 U.S. 943, 70 S.Ct. 423, 94 L.Ed. 581 (1950);

cuit and state courts have split on the issue of whether savings statutes apply to suits originally filed in sister states.[5]

■ Absent compelling precedent from a state, we see no reason to follow old dicta when virtually every state has a savings statute and no significant policy would be advanced by holding such a statute inapplicable to actions originally filed in sister states. Defendant here was put on notice of the action in a timely manner and there was no more delay involved than if the action had been filed in the forum state and dismissed there for procedural reasons. Nor would holding that a savings statute is inapplicable to actions filed in sister states further any policy of the forum state to protect its citizens from discrimination by other states.

■ Defendant's second argument is that as a matter of law, the intervening fault of C.M. Moore Company was a superseding cause under the doctrine of shifting responsibility. *See* Restatement (Second) of Torts (1965) § 452. As defendant admits, the general rule is that mere intervening negligence does not normally supersede a prior act of negligence and the question of shifting responsibility is a question of fact for

*Sorensen v. The Overland Co.,* 142 F.Supp. 354 (D.Del.1956), *aff'd,* 242 F.2d 70 (3d Cir.1957).

**5.** For courts holding savings statutes applicable to actions filed in sister states, *see Stare v. Pearcy,* 617 F.2d 43 (4th Cir.1980) (applying West Virginia law); *Allen v. Greyhound Lines,* 656 F.2d 418 (9th Cir.1981) (applying Montana law); *Leavy v. Saunders,* 319 A.2d 44 (Del. 1977). But for courts holding savings statutes inapplicable to actions filed in sister states, compare *Andrew v. Bendix Corp.,* 452 F.2d 961 (6th Cir.1971), *cert. denied,* 406 U.S. 920, 92 S.Ct. 1773, 32 L.Ed.2d 119 (1972) (applying Ohio law); *Graham v. Ferguson,* 593 F.2d 764 (6th Cir.1979) (applying Tennessee law); and *Howard v. Allen,* 30 Ohio St.2d 130, 283 N.E.2d 167, *appeal dismissed,* 409 U.S. 908, 93 S.Ct. 251, 34 L.Ed.2d 169 (1972) (applying Ohio law).

**6.** [T]he form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect

the jury. Defendant contends, however, that the issue of superseding negligence and shifting responsibility may be decided as a matter of law "where the parties do not dispute the critical facts and only their legal effect remains in issue." *Meuller v. Jeffrey Mfg.,* 494 F.Supp. 275, 277 (E.D.Pa. 1980). Even if this circuit were to adopt this exception, it would not apply in the instant case. As discussed below, the parties here dispute virtually all of the critical facts. Thus, the issue of superseding cause and shifting responsibility was properly decided by the jury.

■ Plaintiff's first argument is that the trial court erred in submitting the question of her assumption of risk to the jury because there was no evidence that she assumed the risk. In *Brooks v. Dietz,* 218 Kan. 698, 545 P.2d 1104 (1976), Kansas adopted the rule of strict liability as defined in Section 402A of the Restatement (Second) of Torts (1965), including the assumption of risk defense.[6] To establish this defense, defendant must prove that the injured plaintiff (1) discovered the defect; (2) was aware of the danger; and (3) unreasonably continued to use the product. The jury instruction given by the trial court reflected these elements.[7]

and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery.
Comment n to § 402A.

**7.** Instruction No. 14 states:
Defendant claims as a defense that plaintiff made unreasonable use of the machine in question.
It is a defense to an action against a manufacturer for injuries resulting from the use of an unreasonably dangerous product, that the person injured discovered the defect in the product, became aware of the danger, and unreasonably continued to use the product.
In determining whether plaintiff's use of the direct-drive granulator was unreasonable, you should consider all the circumstances including plaintiff's age, plaintiff's education, the length of plaintiff's employment and the expectations of plaintiff's employer.
If you find that plaintiff did make unreasonable use of the machine, as defined in this instruction, and the same caused in whole or in part plaintiff's injuries and damages, then

After trial, plaintiff moved for a judgment notwithstanding the verdict challenging the instruction. The court denied plaintiff's motion holding that the instruction complied with *Brooks* and that there was sufficient evidence to warrant its submission to the jury.

■ On appeal plaintiff does not challenge the substance of the instruction but only whether there was enough evidence to submit the issue to the jury. The parties presented conflicting evidence as to every element. Plaintiff testified that she did not in fact know of the defect, was not aware of the danger, and did not unreasonably continue to use the product after discovering the defect. She testified that she was given no instruction as to how to wear her hair and that any applicable rule was not strictly enforced. She also presented evidence to establish that the defect and danger was not obvious to the average person, including new employees.

Defendant, on the other hand, presented evidence to establish that the defect was so obvious that any adult would be aware of the danger. Defendant also presented evidence that plaintiff was instructed to wear her hair tied up.

In view of this clearly conflicting evidence, the question was properly for the jury to resolve. *Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp.,* 571 F.2d 1144, 1149 (10th Cir.), *cert. denied,* 439 U.S. 862, 99 S.Ct. 183, 58 L.Ed.2d 171 (1978). The evidence was sufficient to support the jury's conclusion.

Plaintiff's second contention is that jury instructions Nos. 16 and 18 [8] applied erroneous duties and burdens to plaintiff's employer. In essence, plaintiff argues that the instructions permitted the jury to assess the employer's ordinary negligence when it

you may assess a percentage of causal responsibility to the plaintiff.
Record vol. 2, at 133.

**8.** Instruction No. 16 states:

In determining the causal responsibility, if any, of plaintiff's employer, C.M. Moore Company, you are instructed that an employer has a duty not to expose the employee in the discharge of his employment to perils and dangers against which the employer can guard by the exercise of reasonable care. He has a duty to warn the employee of hazardous conditions that the employer cannot guard against by the exercise of reasonable care. It is also the employer's duty to provide safe and suitable machinery, tools and implements to work with and a safe place to work. This includes the duty to exercise reasonable care in furnishing such appliances, and in keeping them in repair and making inspections and tests.
Record vol. 2, at 135.

Instruction No. 18 states:

An occurrence, such as the accident in question, and the damages suffered by plaintiff, at issue in this case, may have several separate causes which combine, in various degrees, to bring about the occurrence, or it may have a single cause to which such occurrence is solely attributable. You are asked to determine the extent to which each of the parties may have played a role in causing plaintiff's injuries and resulting damages.

Your first obligation is to determine whether defendant can be held causally responsible for plaintiff's injuries and damage under the theory of strict liability as defined in these instructions.

If you find that defendant has causal responsibility for plaintiff's injuries, then you must determine whether plaintiff and plaintiff's employer, C.M. Moore Company, were also causally responsible in any degree. You must assign a percent reflecting that person's or entity's causal contribution, if any, to plaintiff's injuries. This percentage figure for each person or entity may range from zero percent (0%) to one hundred percent (100%). When the percentages of the causal responsibilities of all persons or entities involved in the accident are added together, the total must equal one hundred percent (100%).

In making the apportionment of such percentages, you should keep in mind that the percentage assigned is not to be measured solely by the number of particulars in which one party is found to have been causally responsible. Rather, you should weigh the respective contributions of each person or entity to the occurrence and considering the conduct of each as a whole, determine whether one made a larger contribution than the other, and if so, to what extent it exceeds that of the other. In making such allocation you should consider the extent to which each could have foreseen the possibility of injury, the extent to which each was in a position to control the circumstances which led to the injury, and the ease with which each could have taken steps to make injury less likely.
Record vol. 2, at 137–38.

should have been permitted to allocate part of the liability to the employer only on a showing that the employer assumed the risk of plaintiff's injury. Plaintiff's argument is based on Comment n to section 402A of the Restatement (Second) of Torts (1965) and *Brooks v. Dietz,* 218 Kan. 698, 545 P.2d 1104 (1976). Since C.M. Moore, the employer, was a user or consumer of the equipment, plaintiff argues its fault can be considered only if it meets the elements of assumption of risk. Plaintiff misconstrues *Brooks. Brooks* deals only with plaintiff's contributory negligence and assumption of risk. In any event, since *Brooks* the Kansas court has shifted directions because of the effect of the Kansas Comparative Negligence Act. It has applied the doctrine of comparative fault to strict liability actions. *Kennedy v. City of Sawyer,* 228 Kan. 439, 452, 618 P.2d 788, 798 (1980). "[A]ll parties to an occurrence must have their fault determined in one action, even though some parties cannot be formally joined or held legally responsible." *Albertson v. Volkswagenwerk Aktiengesellschaft,* 230 Kan. 368, 374, 634 P.2d 1127, 1132 (1981). Section 258a(c) of the Kansas Comparative Negligence Act allows a defendant to force a comparison of fault with third parties, even though formal joinder is not required. *Kennedy v. City of Sawyer,* 228 Kan. 439, 460, 618 P.2d 788, 803 (1980). This comparison of fault of phantom parties has been extended to products liability cases. *Forsythe v. Coats Co.,* 230 Kan. 553, 639 P.2d 43 (1982); *Lester v. Magic Chef, Inc.,* 230 Kan. 643, 641 P.2d 353 (1982).

In essence, what Kansas has done is to let the jury determine the degree to which each actor has departed from his or her respective duty[9] and apportion fault accordingly. As explained in *Kennedy,* all types of fault, regardless of degree, are to be compared with that of defendant whether the fault is characterized as contributory negligence, assumption of risk, product mis-

use, or unreasonable use. All of these defenses depend on the reasonableness of plaintiff's conduct, a negligence concept. *Kennedy v. City of Sawyer,* 228 Kan. 439, 618 P.2d 788, 796–97. As we pointed out in *Hardin v. Manitowoc-Forsythe Corp.,* 691 F.2d 449, 455 n. 5 (10th Cir.1982), this approach is analytically difficult to harmonize with traditional notions of strict liability and negligence. Yet,

> [w]e are persuaded that what Kansas intends by the overarching application of comparative negligence to all forms of death, personal injury or property damage cases is to override prior notions of liability to the extent that they are based on notions of spreading the risk or notions of insurance, and to now examine such cases in light of the sundry duties which the cases have heretofore imposed on various parties related in some form or other to the claimed injury. *Thus injured consumers will be examined by contributory negligence standards to determine the degree to which they have departed from their duty of ordinary care.*

*Id.* (emphasis added).

The same general principles apply to phantom employers. The court must instruct on their duties and the standards by which to measure any departure from duty by an employer. The jury instructions at issue here properly defined the employer's duty of care and enabled the jury to determine the extent to which, if at all, the employer departed from its duty. We noted in *Hardin, id.,* that a jury instruction based on the concepts of section 402A Restatement (Second) of Torts (1965) would not constitute reversible error, but 402A does not define the ultimate parameters of an appropriate instruction. While the Kansas law is in this state of transition, we do not find that an instruction based on contributory negligence is reversible error.

---

**9.** Each actor's departure is measured from their respective duty of care. Manufacturers have a strict duty of care in design and production, including the duty to guard against injury to ordinary and even negligent consumers. Dis-

tributors also have a strict duty to warn of dangers and to inspect. Consumers have a lower duty of care than manufacturers and distributors, but they still have an ordinary duty of care.

Plaintiff also contends that jury instructions Nos. 16 and 18 violated her right to due process and equal protection of the laws under the fifth and fourteenth amendments to the United States Constitution. She argues that applying comparative causal responsibility in cases involving workmen's compensation discriminates against industrial workers, thus violating the equal protection clause. She claims that because her recovery is reduced by the percentage of the employer's fault, she is deprived a property right (the jury award) without due process of law.

■ In *Davidson v. Hobart Corp.,* 643 F.2d 1386, 1387 (10th Cir.1981), this court held that the exclusive remedy provision of the Kansas Worker's Compensation Act does not involve a suspect classification or a fundamental constitutional right. Thus, being rationally related to a legitimate state objective, the statute does not offend the equal protection clause of the fourteenth amendment. The application of comparative causation to cases involving worker's compensation does not change this analysis. The same class, workers covered by worker's compensation, is involved with or without the application of comparative causation. This class is no more suspect after the application of comparative causation than it was before. Further, it would not be rational to increase another defendant's liability above the level of his fault simply because worker's compensation is involved. The rational purpose of the Kansas Comparative Negligence Act, Kan.Stat. Ann. § 60–258a (1976), is to hold each defendant liable only in proportion to that defendant's fault. Even though the employer is a nonsuable phantom in this case, plaintiff is not without a remedy against the employer. Worker's compensation provides a remedy even if the employer was guilty of no fault at all.

■ The plaintiff also contends that a jury instruction allowing the jury to assess causal responsibility against her employer, thereby reducing her final recovery, constitutes the taking of private property without due process, in violation of the fifth and fourteenth amendments. Assuming *arguendo* that plaintiff has a protectable property right,[10] only her remedy has been affected and the same rational basis analysis applies as applied to plaintiff's equal protection claim. Plaintiff's right to recover for that portion of damages attributable to her employer has merely been left to the preexisting scheme embodied in the worker's compensation statute. Thus, we do not find that plaintiff's due process or equal protection rights have been violated.

■ Finally, plaintiff argues that jury instructions Nos. 5 and 7[11] improperly

---

10. Although the jury assessed the amount of plaintiff's damages, she does not have a vested property right in all of those damages. Under Kansas comparative causation and worker's compensation she does not have a right in any damages attributable to the fault of her employer except as provided in the worker's compensation statute.

11. Instruction No. 5 states:

The plaintiff Nancy Kathleen Prince claims that she sustained damage and injury on March 12, 1977, while working at the C.M. Moore Company. The plaintiff contends that she was damaged and injured while she was operating a direct-drive granulator manufactured by the defendant when her hair became entangled in the coupling and coupling shaft of the direct-drive granulator. The plaintiff asserts that the granulator was in a defective condition unreasonably dangerous to persons who might be expected to use the granulator at the time it left the control of the defendant in one or more of the following respects, to-wit:

1. The direct-drive granulator did not have an adequate guard covering the coupling and coupling shaft to protect operators of said granulator from the foreseeable danger of the coupling and coupling shaft, and

2. The direct-drive granulator did not have instructions or warnings placed on the granulator or in the written material furnished with the granulator necessary for the granulator's safe use concerning the foreseeable danger of operating said granulator without an adequate guard covering the coupling and coupling shaft.

Defendant admits that it manufactured and sold the direct-drive granulator in question. However, defendant denies that the machine was in the same condition at the time plaintiff claims she was injured, as when it was manufactured and sold by defendant, and denies that the machine was being used by plaintiff in a safe manner.

defined the defendant's burden of proof as only requiring a showing that plaintiff was negligent as opposed to requiring a showing that plaintiff assumed the risk. This argument is premised on *Brooks v. Dietz,* 218 Kan. 698, 545 P.2d 1104 (1976), and fails for the reasons discussed above with respect to plaintiff's second argument.

AFFIRMED.

Defendant further claims that plaintiff's employer, C.M. Moore Company, caused plaintiff's injuries in whole or in part in the following respects:

1. Failing to adequately supervise a new employee;

2. Failing to properly maintain the direct-drive granulator; and

3. Failing to give adequate instructions to a new employee.

Instruction No. 7 states:

The burden of proof as to the issues before you lies with different parties. Burden of proof means burden of persuasion. A party who has the burden of proof must persuade you that his claim is more probably true than not true. In determining whether a party has met this burden, you will consider all the evidence, whether produced by the plaintiff or the defendant.

In this action, plaintiff has the burden of proof to show:

1. That plaintiff was injured and sustained damages from the occurrence on March 12, 1977;

2. That her injuries and damages were caused, in whole or in part, by the machine in question; and

3. That the elements necessary to impose liability upon the defendant are present under the theory of strict liability as defined by these instructions.

The defendant has the burden of proof as to the defense of plaintiff's alleged unreasonable use of the direct-drive granulator.

The defendant also has the burden of proof to show any causal contribution to plaintiff's injuries and damages of the C.M. Moore Company.