No. 75,473

ADAM·GOLDSMITH, JULIE BETH GOLDSMITH, and HENRY JOSH GOLDSMITH, a minor, by his mother, natural guardian and next friend, Beth Goldsmith, and BETH GOLDSMITH, individually, the Heirs at Law of HAROLD GOLDSMITH, Deceased; and BETH GOLDSMITH, ALAN BERKOWITZ, and NEIL AMBACH, the personal representatives of the Estate of Harold Goldsmith, Deceased, *Appellants*, v. LEARJET, INC., *Appellee.*

(917 P.2d 810)

Opinion filed May 31, 1996.

*Randall E. Fisher*, of Wichita, and *Marc S. Moller*, of Kreindler & Kreindler, of New York, New York, argued the cause, and *Derek S. Casey*, of Hutton & Hutton, of Wichita, and *David L. Fiol*, of Kreindler & Kreindler, of New York, New York, were with them on the briefs for appellants.

*Michael J. Davis*, of Stinson, Mag & Fizzell, P.C., of Overland Park, argued the cause, and *L. Richard Musat*, of Treece, Alfrey & Musat, P.C., of Denver, Colorado, and *Edwin W. Green* and *Manuel Saldaña*, of Bronson, Bronson & McKinnon, of Los Angeles, California, were with him on the brief for appellee.

*Mark A. Furney*, of Overland Park, was on the brief for *amicus curiae* Kansas Trial Lawyers Association.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This case involves conflicts law and statutes of limitations. Heirs and representatives of the estate of Harold Goldsmith, who was killed in the crash of a Learjet aircraft in Colorado, seek wrongful death and survival damages. They filed a timely petition in state court in Kansas and voluntarily dismissed it more than 2 years after Goldsmith's death. Within 6 months of the dismissal, they refiled in United States District Court, claiming diversity jurisdiction. On the ground that the diversity action was time barred by Colorado's statute of limitations, summary judgment was entered against them by the United States District Court for the District of Kansas. An appeal was taken.

This case is before us on questions certified by the United States Court of Appeals for the Tenth Circuit under the Uniform Certification of Questions of Law Act, K.S.A. 60-3201 *et seq.* Following the filing of briefs and oral argument, Circuit Judge David M. Ebel certified to this court the following questions:

1.  Whether the Kansas borrowing statute, K.S.A. 60-516, borrows the foreign state's saving statute so as to preempt the Kansas saving statute.
2.  Whether the Kansas saving statute, K.S.A. 60-518, saves wrongful death actions.
3.  Whether the Kansas saving statute saves actions that the Kansas borrowing statute otherwise would bar.

The facts are set out in the certification order as follows:

"On February 13, 1991, a Learjet aircraft crashed during landing near Aspen, Colorado, killing everyone aboard including Harold Goldsmith (the 'decedent'). Representatives of decedent's estate filed a survival action against Learjet in Kansas state court on February 11, 1993 (the 'first action'), captioned *Berkowitz v. Learjet*, No. 93C55. The plaintiffs voluntarily dismissed that action on June 9, 1993. These representatives, along with the decedent's wife and three children, then brought a diversity action on November 30, 1993, in U.S. District Court for the District of Kansas, seeking wrongful death and survival damages (the 'second action'). This Certification arises out of the second action. None of the plaintiffs are Kansas residents. Learjet's principal place of business is in Kansas.

"Learjet filed a summary judgment motion, arguing that the second action was untimely under the statutes of limitations of both Kansas and Colorado, both of which limit the period when a party may bring a wrongful death action to two years. Kan. Stat. Ann. § 60-513(5); Colo. Rev. Stat. § 13-80-102. In response, plaintiffs argued that the Kansas saving statute, Kan. Stat. Ann. § 60-518, extended

the time within which they could bring the second action. The Kansas saving statute provides that when an action is dismissed for a reason other than the merits after the statute of limitations lapses, the plaintiff may commence a new action within six months from the dismissal. *Id.*

"Learjet responded that the Kansas borrowing statute, Kan. Stat. Ann. § 60-516, nonetheless prevented plaintiffs from maintaining the second action regardless of the saving statute. The borrowing statute bars a resident of a state other than Kansas from maintaining an action in Kansas when the laws of the state where the cause of action arose would bar the same action. *Id.* Here, the cause of action arises in Colorado and Colorado law would have barred plaintiffs from bringing an action in Colorado at the time they brought the second action in Kansas. Colorado's savings statute extends the Colorado statute of limitations only ninety days after the dismissal of the original action and is applicable only when the first action be dismissed for lack of jurisdiction or improper venue. *See* Colo. Rev. Stat. §13-80-111. Plaintiffs fail both requirements.

"Learjet further argued that Kansas Supreme Court precedent directly bars courts from applying the Kansas saving statute to wrongful death causes of actions. *See Rodman v. Missouri Pac. Ry. Co.*, 70 P. 642, 644 (Kan. 1902). Plaintiffs responded that the state legislature's decision in 1963 to sever the limitations period for wrongful death claims from the action's substantive statutory requirements and to relocate that provision among the statutory provisions addressing other statute of limitations provisions indicate that *Rodman* no longer remains valid law. Plaintiffs also refer to more recent Kansas cases suggesting that the saving statute applies to wrongful death claims.

"The district court granted Learjet's motion for summary judgment, accepting its arguments that both the effect of the Kansas borrowing statute and the Rodman precedent barred the second action."

The federal district court, in entering summary judgment in favor of Learjet, concluded that the rule of *Rodman v. Railway Co.*, 65 Kan. 645, 70 Pac. 642 (1902), that the Kansas saving statute does not apply to wrongful death claims, barred the second action. It also concluded that the Kansas borrowing statute incorporates Colorado's saving statute, thus precluding application of the Kansas saving statute. The Colorado saving statute, which is more restrictive than that of Kansas, will not save the second action. Finally, the district court concluded that the Kansas saving statute would not revive the time-barred action because the Kansas borrowing statute is more specific than, and therefore governs over, the Kansas saving statute.

Question No. 1

Whether the Kansas borrowing statute, K.S.A. 60-516, borrows the

foreign state's saving statute so as to preempt the Kansas saving statute.

In ruling on Learjet's motion for summary judgment in the present case, the United States District Court for the District of Kansas applied Kansas' limitations laws. Because the action arose in Colorado, Kansas' borrowing statute was considered. In the view of the district court, the Kansas borrowing statute incorporated all aspects of the limitations law of Colorado to the preclusion of the Kansas saving statute. In its certification, the Tenth Circuit Court of Appeals directed to this court a question of the scope of the borrowing statute's operation. The Court of Appeals stated: "A threshold issue in this case is whether the Kansas borrowing statute would borrow not only the Colorado statute of limitations, but also the Colorado saving statute as well, thereby precluding the operation of the Kansas saving statute."

The pertinent and arguably pertinent limitations laws of Kansas and Colorado are quoted here: The basic statutes of limitations of both states limit the period in which a wrongful death action may be initiated to 2 years from the death. K.S.A. 60-513(a)(5) provides: "(a) The following actions shall be brought within two years: . . . (5) An action for wrongful death." Colo. Rev. Stat. § 13-80-102(1)(d) (1987) provides: "(1) The following civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, shall be commenced within two years after the cause of action accrues, and not thereafter: . . . (d) All actions for wrongful death." The Kansas borrowing statute provides:

"Where the cause of action has arisen in another state or country and by the laws of the state or country where the cause of action arose an action cannot be maintained thereon by reason of lapse of time, no action can be maintained thereon in this state except in favor of one who is a resident of this state and who has held the cause of action from the time it accrued." K.S.A. 60-516.

## The Kansas saving statute provides:

"If any action be commenced within due time, and the plaintiff fail in such action otherwise than upon the merits, and the time limited for the same shall have expired, the plaintiff, or, if the plaintiff die, and the cause of action survive, his or her representatives may commence a new action within six (6) months after such failure." K.S.A. 60-518.

The Colorado saving statute provides, in part:

"(1) If an action is commenced within the period allowed by this article and is terminated because of lack of jurisdiction or improper venue, the plaintiff . . . may commence a new action upon the same cause of action within ninety days after the termination of the original action or within the period otherwise allowed by this article, whichever is later . . . .

"(2) This section shall be applicable to all actions which are first commenced in a federal court as well as those first commenced in the courts of Colorado or of any other state." Colo. Rev. Stat. § 13-80-111 (1987).

The Colorado borrowing statute provides:

"If a cause of action arises, in another state or territory or in a foreign country and, by the laws thereof, an action thereon cannot be maintained in that state, territory, or foreign country by reason of lapse of time, the cause of action shall not be maintained in this state." Colo. Rev. Stat. § 13-80-110 (1987).

Decision of the federal district court. According to the federal district court, because Goldsmith died in Colorado, Kansas' borrowing statute is "the most relevant portion of Kansas law." Under the borrowing statute, K.S.A. 60-516, an action time barred in Colorado is barred in Kansas. Because the present action was filed more than 2 years after Goldsmith's death, it is untimely under Colorado's statute of limitations. Because the heirs' timely first action was voluntarily dismissed and because it was refiled more than 90 days after dismissal, the Colorado saving statute would not save this action.

In the federal district court, the heirs argued that the Kansas saving statute applied rather than the Colorado saving statute. Their rationale was that "a borrowing statute such as K.S.A. 60-516 will not incorporate a foreign jurisdiction's savings provisions." The federal district court rejected the argument as follows:

"The latest decisions have uniformly indicated that the borrowing statute effectively borrows the entire corpus of the limitations law of the foreign jurisdiction, including any savings provisions. See *Graham v. Ferguson*, 593 F.2d 764 (6th Cir. 1979); *Conner v. Spencer*, 304 F.2d 485 (9th Cir. 1962); *Master Mortgage Investment Fund v. American Nat'l Fire Ins.*, 151 B.R. 513 (Bankr. W.D. Mo. 1993); *Thompson v. Crawford*, 833 S.W.2d 868, 872 (Mo. 1992); *Knieriemen v. Bache Halsey Stuart Shields, Inc.*, 427 N.Y.S.2d 10, *app. dismissed*, 50 N.Y.2d 1021 (1980); *Frombach v. Gilbert Associates, Inc.*, 236 A.2d 363 (Del. 1967), *cert. denied* 391 U.S. 906 (1968)."

Close examination of the cited authorities indicates that the federal district court's statement is too sweeping and the cases are distinguishable from the present case.

In *Graham v. Ferguson,* 593 F.2d 764 (6th Cir. 1979), suit was timely filed in Texas by Texas citizens against Michigan citizens, seeking damages for personal injuries resulting from an automobile accident which occurred in Tennessee in November 1971. It was dismissed in December 1973 for lack of personal jurisdiction. Summary judgment was entered against plaintiffs in the subsequent suit, which was filed in federal district court in Michigan in January 1974. The Sixth Circuit Court of Appeals affirmed. 593 F.2d at 765.

The Tennessee saving statute, which would give a 1-year grace period after dismissal of the first action in which a second action could be filed, would have saved the action filed by the Texas plaintiffs in Michigan. The Tennessee saving statute, however, was *not* applied on the ground that it would not be "invoked by the filing of a suit in another state where there is no basis for personal jurisdiction over the defendants." 593 F.2d at 766. The authorities cited, however, stand for the broader proposition that filing of a suit in one state does not invoke another state's saving statute. See, *e.g., Sigler v. Youngblood Truck Lines, Inc.,* 149 F. Supp. 61 (E.D. Tenn. 1957).

In the present case, the first action was filed in Kansas, the state in which Learjet's principal place of business is located. Because there was a basis for personal jurisdiction of Learjet, the rationale stated in *Graham* has no application here. In the present case, both the first and second suits were filed in Kansas. Thus, under the rule for which the district court and the Court of Appeals cited authority, application of Colorado's limitations laws to this second action would not include application of Colorado's saving statute, Colo. Rev. Stat. § 13-80-111.

In *Conner v. Spencer,* 304 F.2d 485 (9th Cir. 1962), personal injuries were sustained by the Conners in a 1955 automobile accident in Idaho, where all parties then resided. Before they filed suit in federal district court in Oregon in 1960, the Conners had moved to that state. The action was barred by Oregon's 2-year

statute of limitations. The Oregon borrowing statute was essentially identical to that of Kansas, barring suit in Oregon if the action would be barred in Idaho. In addition to its 2-year statute of limitations for personal injury actions, Idaho had a tolling provision which might have extended the limitations period to the advantage of the Conners. The Court of Appeals, however, refused to consider Idaho's tolling provision because its effect would have been to lengthen the period of limitations in the forum, Oregon. The court held that result would not serve the purpose of the borrowing statute, which was said to be to bar the action in the forum if it would be barred where the cause of action arose. 304 F.2d at 487.

"Thus the statute of limitations of the forum provides an ultimate limitation upon the period within which suit may be brought in its courts, even though by operation of a tolling statute the period of limitations on the cause of action has not yet expired in the jurisdiction in which it accrued. [Citations omitted.]" 304 F.2d at 487.

The policy behind the rule that foreign limitations laws may not lengthen the period for suit in the forum is to confine actions to the period in which it is believed *by the forum* that it can administer substantial justice between the parties. 304 F.2d at 487.

*Thompson by Thompson v. Crawford*, 833 S.W.2d 868, 872 (Mo. 1992), states the rule that the Missouri borrowing statute applies any tolling provision as well as the statute of limitations of the state in which a cause of action arose. Tennessee, where the accident occurred, had no tolling provision for minors. The Tennessee rule was applied by the Missouri court to preclude any tolling of the Tennessee 1-year statute of limitations. As a result, a minor's suit for the wrongful death of his mother was time barred before he was beyond infancy, even though under Missouri law his suit could have waited until he reached age 21. The trial court's dismissal of the petition was affirmed. In the present case, we are not concerned with the tolling provisions of Colorado.

*Frombach v. Gilbert Associates, Inc.*, 236 A.2d 363 (Del. 1967), *cert. denied* 391 U.S. 906 (1968), is the last of the cases cited by the federal district court as one of the "latest decisions" which uniformly stand for the rule that "the borrowing statute effectively borrows the entire corpus of the limitations law of the foreign ju-

risdiction, including any savings provisions." Frombach, a Pennsylvania resident, sued Gilbert Associates, Inc., and another corporation for bodily injuries sustained in Pennsylvania in October 1963. The first action was brought in federal court in Delaware. Eventually, the other corporation was dismissed on stipulation, thus destroying diversity jurisdiction and leading to dismissal of the action in 1966, after the 2-year statutes of limitations of Delaware and Pennsylvania had expired. Frombach promptly filed suit in Delaware state court, and defendant sought dismissal on the ground that the suit was time barred. The trial court certified questions about the limitations period and conflict of laws to the Delaware Supreme Court. The first certified question was whether the Delaware saving statute would preserve the action. The Supreme Court assumed without deciding that the answer would be in the affirmative. 236 A.2d at 366.

The second question was stated as follows: "If such right of action is preserved by the Savings Statute, does the Delaware Borrowing Statute . . . bar the right of action if it arises out of a tort committed in a jurisdiction having a two-year tort Statute of Limitations but no applicable Savings Statute?" 236 A.2d at 364. Noting that the saving statute had become part of Delaware law in 1829 and that the borrowing statute was not enacted until 1947, the court stated: "Any inconsistency or conflict between those two sections would ordinarily be resolved in favor of the latter one, under the theory of implied amendment or partial repealer." 236 A.2d at 365. The theory embraces the notion that the legislature would have been aware of the existing statute and could have excepted it if that were its intent. The court also observed that the purpose of the borrowing statute would be served if it were given prevalence over the saving statute: " 'It is . . . an act to prevent "forum-shopping." If a non-resident chooses to bring a foreign cause of action into Delaware for enforcement, he must bring the foreign statute of limitations along with him if the foreign statute prescribes a shorter time than the domestic statute.' [Citation omitted.]" 236 A.2d at 365.

*Frombach* arguably is distinguished on both grounds for the decision—a rule of statutory construction which limits application of

one provision by the terms of a later enactment and a policy of preventing forum shopping. The Kansas saving and borrowing statutes are contemporaries, and "the evils of forum-shopping" arguably are not present in this case. Moreover, Kansas is unlike Delaware in that Kansas is not the incorporation capital of western enterprise. Because so many companies which conduct nationwide business can be served in Delaware by virtue of incorporation there, Delaware courts probably find it in their interest to discourage nonresident litigants from filing suit; hence the Delaware court's statement that Frombach, a nonresident litigant, would be required to bring his own state's more restrictive limitations period with him. Kansas courts need not share the concern of Delaware courts in guarding against a torrent of litigation by nonresident plaintiffs against businesses incorporated in Kansas.

The Heirs' Position. The heirs contend here that a recent decision of this court, *See v. Hartley*, 257 Kan. 813, 896 P.2d 1049 (1995), governs this question and makes the Kansas borrowing statute irrelevant. They point out that *See* had not been decided when the briefs were filed in the Tenth Circuit Court of Appeals and that they were unaware of it at the time of oral argument. For these reasons, *See* was not cited by the heirs in the federal court. Assuming that the federal Court of Appeals would not have been aware of a case not brought to its attention, the heirs assure this court that that is the reason the federal court certified the question even though it already had been settled by this court's decision in *See*.

*See* was an interlocutory appeal in a medical malpractice action from the district court's order denying the defendant doctor's motion for summary judgment. See's first action was timely filed. He voluntarily dismissed it and filed a second action within 6 months. In the meantime, more than 4 years had elapsed from the time of the medical procedure which gave rise to the action. K.S.A. 60-513(c) provides:

"A cause of action arising out of the rendering of or the failure to render professional services by a health care provider shall be deemed to have accrued at the time of the occurrence of the act giving rise to the cause of action, unless the fact of injury is not reasonably ascertainable until some time after the initial act,

then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall such an action be commenced more than four years beyond the time of the act giving rise to the cause of action."

Dr. Hartley argued that the 4-year period was inviolable, thus overcoming the saving statute. The court disagreed:

"The repose provisions of 60-513(c) are not applicable to defeat the savings clause of 60-518 when the initial action was timely filed, even though the second action is not filed until more than four years after the act which gave rise to the cause of action. . . .

"We conclude that once an action is timely filed under the provisions of a so-called ordinary statute of limitations or within the applicable time limitations of a repose statute, such as K.S.A. 60-513(b) or (c), the action is then subject to the savings provision of K.S.A. 60-518. . . . The first action, having been timely filed, was subject to the savings provision of K.S.A. 60-518, and therefore the second action was also timely and not barred by K.S.A. 60-513(c)." 257 Kan. at 822-23.

Although the borrowing statute, K.S.A. 60-516, was not a factor in the court's decision in *See*, the heirs contend that *See* is fully controlling. They contend that the court's words and reasoning require application of the Kansas saving statute to their second action because their first action was timely filed. The following words appear in *See*: "Once the action was timely filed within the provisions of our procedural statutes, plaintiff is entitled to all of the protections afforded any other timely filed civil action, including the savings provision of K.S.A. 60-518." 257 Kan. at 821-22. The heirs' first action was timely filed; hence, they presume entitlement to the protection of the saving statute. The reasoning in *See* included construing the language "and the time limited for [filing the action] shall have expired" in the saving statute to include *any time limitation*. 257 Kan. at 822. "Any time limitation" is broad enough to include the Colorado time limitation; hence, the heirs presume that the Kansas saving statute defeats the Kansas borrowing statute.

Learjet's Position. Learjet relies on the following cases for the fundamental proposition that a borrowing statute requires a trial court to apply all the foreign limitations laws, including specifically a foreign saving statute, to the preclusion of the forum's saving statute: *Graham*, 593 F.2d 764; *In re Master Mortg. Inv. Fund,*

*Inc.*, 151 Bankr. 513 (W.D. Mo. 1993); *Davis v. Liberty Mut. Ins. Co.*, 840 F. Supp. 90, 92 (E.D. Mo. 1993), *rev'd on other grounds* 55 F.3d 1365 (8th Cir. 1995); *Penalosa Co-op Exchange v. A.S. Polonyi Co.*, 754 F. Supp. 722, 732-34 (W.D. Mo. 1991); and *Frombach*, 236 A.2d at 365-66.

*Penalosa Co-op* was decided a year before the Missouri Supreme Court overturned its earlier decisions in *Thompson*. Penalosa Co-op filed tort claims against a broker which arose from the cooperative's manager's embezzling money which he used for his personal speculation in the commodities market. Penalosa Co-op first filed suit in state court in Kansas. It was removed to federal district court in Kansas and dismissed for lack of personal jurisdiction more than 2 years after the date on which injury allegedly was reasonably ascertainable. Within 6 months, plaintiff filed a second suit in federal district court in Missouri. 754 F. Supp. at 734. The reported opinion is an order denying the broker's motion for summary judgment due to outstanding issues of fact involving due diligence and when injury was or should have been known. Questions of law which were settled in the order included applying the Missouri borrowing statute so that the Kansas statute of limitations would govern because Kansas was where the damage was first capable of ascertainment. 754 F. Supp. at 733. The federal district court also concluded that the Kansas saving statute would be applied. 754 F. Supp. at 734.

The cooperative's cause of action would not have been barred under Missouri's 5-year statute of limitations, but it would have been barred under Kansas' 2-year statute of limitations without operation of the Kansas saving statute. The broker's only argument about applicability of the Kansas saving statute which is germane to the present case was that it was "inapplicable because it has no 'extra-territorial [e]ffect and, therefore, does not apply to "foreign" actions.'" 754 F. Supp. at 734. The authority cited by the broker, *Jackson v. Oil & Gas Co.*, 115 Kan. 386, 222 Pac. 1114 (1924), does not support the proposition. The federal district court stated: "[*Jackson*] held that a forum's savings statute does not apply when the earlier action is brought in some other state." 754 F. Supp. at 734. Because the forum was Missouri and the cooperative sought

to apply the Kansas saving statute to the action which it first brought in Kansas, the federal district court concluded that *Jackson's* holding was inapplicable. In fact, in *Jackson* the Kansas court remarked on but did not reach the question whether a forum state's saving statute would apply when the earlier action was brought in another state. The oil company argued that the Kansas saving statute "does not apply when the former action is brought in another state. This point appears to be well taken (*Herron v. Miller*, 220 Pac. 36 [Okla.]), though in view of the conclusion already reached, it is not necessary to pass upon it." 115 Kan. at 391. Jackson's personal injury action was dismissed on the ground that the Kansas saving statute did not apply because

"the regular two-year statute of limitations had not expired at the time the [first] action in Oklahoma was dismissed. . . . [H]ence the plaintiff had more than three months after the dismissal of the [first] action in Oklahoma to file an action in [Kansas] within the regular two-year statute of limitations." 115 Kan. at 387.

*Davis*, 840 F. Supp. 90, involved tort claims filed in Missouri state court. All parties agreed that the applicable statute of limitations was the 2-year Iowa statute. Plaintiffs voluntarily dismissed the first action, refiled in Missouri after the limitations period had expired, and then the case was removed to federal court. The federal district court relied on the Missouri Supreme Court's decision in *Thompson* in concluding that the Iowa saving statute would apply. Where the state court required "companion statutes which limit and restrict . . . operation" of a borrowed statute of limitations to be taken along with it, the federal court "conclude[d] that the same reasoning applies to borrowing another state's savings provision along with its statute of limitations." 840 F. Supp. at 92.

The opinion in *Davis* is an example of analytical confusion resulting from misconceptions in this convergence of limitations law and conflicts of laws. There, the court stated: "The parties agree and the Court concludes that Iowa's two year statute of limitations for personal injury actions . . . applies." 840 F. Supp. at 92. In this circumstance, Missouri's borrowing statute would be irrelevant and there would be no question about which state's saving statute applied. Iowa's saving statute would be applicable because Iowa's

limitations laws were applicable irrespective of Missouri's borrowing statute. The function of a borrowing statute is to override the *otherwise controlling forum state's statute of limitations* where the statute of limitations of the state in which the cause of action arose would bar the action. In other words, the general rule is that the forum state's statute of limitations is applied. *Sun Oil Co. v. Wortman*, 486 U.S. 717, 100 L. Ed. 2d 743, 108 S. Ct. 2117 (1988) (holding that neither the full faith and credit clause nor the due process clause prohibits Kansas, the forum state, from applying its own statute of limitations to claims that are governed by the substantive law of a foreign state). If, however, an action which would be timely under the forum-state statute of limitations would be time barred in the state in which the cause of action arose, the borrowing statute creates an exception to the general rule. If one starts from the premise that the foreign state's statute of limitations applies, as the parties and the court did in *Davis*, then the forum state's borrowing statute never figures in the analysis. Thus, even though the court purportedly used the Missouri borrowing statute to give effect to the Iowa saving statute, in fact, it should have given effect to the Iowa saving statute without regard to the Missouri borrowing statute.

Thus, Learjet has brought to this court's attention one case, *Penalosa Co-op.*, which supports the proposition that a borrowing statute requires a trial court to apply a foreign saving statute. The heirs would distinguish *Penalosa Co-op* from the present case on the ground that the cooperative's first action was filed in Kansas and the second in Missouri. Here, both cases have been filed in Kansas. The distinction which the heirs urge this court to see is tied to a policy of discouraging forum shopping. In addition, two of the cases cited by the federal district court in its order granting summary judgment support similar propositions. *Thompson* precludes application of a tolling provision of the forum state where there is no counterpart among the laws of the state where the cause of action arose. *Frombach* precludes application of a saving provision of the forum state where there is no counterpart among the laws of the state where the cause of action arose.

Learjet contends that the heirs "are unable to point to even a single case in which a forum's saving statute was held applicable even though a claim was barred by the forum's borrowing statute." In fact, the heirs cite several cases on point. In *Fowler v. Herman*, 200 Tenn. 201, 292 S.W.2d 11 (1956), the Tennessee Supreme Court held that an action for injuries sustained in an automobile accident in Alabama was not barred despite expiration of the Alabama limitations period. It reasoned that a Tennessee statute which saved an action "recommenced within one year from the failure to execute the summons originally sued out in time" trumped the Alabama statute of limitations which was relevant due to the operation of the Tennessee borrowing statute. 200 Tenn. at 204. According to the Tennessee court, the operation of the forum saving statute rendered "the expiration of the one year in Alabama . . . immaterial and irrelevant [so that it] had no effect upon the plaintiff's rights which he had preserved in Tennessee." 200 Tenn. at 205. In *Wright v. New York Underwriters' Ins. Co.*, 1 F. Supp. 663 (W.D. Mo. 1932), plaintiff sued in Missouri on a cause of action which arose in Kansas. The first action was instituted within a year but then was dismissed. When a new suit was filed in Missouri after the Kansas limitations period had expired, the insurance company argued that the Missouri borrowing statute precluded application of the Missouri saving statute. Relying on an Iowa decision, the court rejected the argument. 1 F. Supp. at 664. The heirs point out that this federal decision was followed in Missouri appellate court decisions.

An important variable seems to be where the first suit was filed. As previously mentioned, there is a line of cases holding that saving statutes do not apply to actions first filed elsewhere. In *Graham*, this was represented to be the majority view. Among the cases cited in *Graham* was *Sigler v. Youngblood Truck Lines*, 149 F. Supp. 61 (E.D. Tenn. 1957), a personal injury and property damage suit which arose out of a motor vehicle accident that occurred in Kentucky in September 1955. The Siglers, residents of Tennessee, first sued the trucking company in federal court in North Carolina in August 1956. In October 1956, they voluntarily dismissed that action and instituted the suit in federal court in Tennessee. The Sig-

lers argued that the Tennessee 1-year statute of limitations would not bar their action because the court in Tennessee would apply either the North Carolina saving statute or the Tennessee nonsuit (saving) statute. 149 F. Supp. at 63. In fact, the court concluded that none of the saving provisions of any of the three involved states would apply to a suit commenced in Tennessee which had been preceded by a suit filed in North Carolina within the limitations period. The court noted that the Kentucky limitations period was 1 year and that its saving provision expressly limited its application to suits filed in Kentucky. 149 F. Supp. at 63-64. It concluded that the North Carolina saving statute would not apply "because the Tennessee statutes do not so provide and a foreign statute of this character does not have extra-territorial effect." 149 F. Supp. at 65. And the court concluded that the words "If the action is commenced within the time limited by a rule or statute of limitation" of the Tennessee saving provision "have reference to actions commenced in Tennessee courts only." 149 F. Supp. at 66. In dismissing the action, the court stated: "It is a matter of some consolation that the suits are not barred in the State of North Carolina where trials may be had on the merits." 149 F. Supp. at 68.

Another case cited in *Graham* is *Herron v. Miller*, 96 Okla. 59, 220 Pac. 36 (1923). As noted by the federal Court of Appeals, in the 1924 case of *Jackson v. Oil & Gas*, this court seemed to express approval of the rule from *Herron* that precludes application of the saving statute unless the first suit was filed in the forum.

In a more recent case, *Prince v. Leesona Corp., Inc.*, 720 F.2d 1166 (10th Cir. 1983), the Tenth Circuit Court of Appeals concluded that the trend had reversed. That court predicted that Kansas courts would apply the Kansas saving statute to actions filed first in other states. The federal court stated that "no significant policy would be advanced by holding such a statute inapplicable to actions originally filed in sister states." 720 F.2d at 1169. This court still has not had occasion to consider the question. Here is what the federal Court of Appeals said in 1983:

"Although Kansas has not directly decided the issue, defendant cites the dictum of *Jackson v. Prairie Oil & Gas*, 115 Kan. 386, 391, 222 Pac. 1114, 1116 (1924), in which the Kansas Supreme Court noted that the rule of *Herron v. Miller*, 96

Okl. 59, 220 Pac. 36 (1923), appeared to be well taken. The rule of *Herron*—that the forum's savings statute does not apply when the initial action is brought in another state—is the general rule among older cases. More recently, however, both circuit and state courts have split on the issue of whether savings statutes apply to suits originally filed in sister states.

"Absent compelling precedent from a state, we see no reason to follow old dicta when virtually every state has a savings statute and no significant policy would be advanced by holding such a statute inapplicable to actions originally filed in sister states. Defendant here was put on notice of the action in a timely manner and there was no more delay involved than if the action had been filed in the forum state and dismissed there for procedural reasons. Nor would holding that a savings statute is inapplicable to actions filed in sister states further any policy of the forum state to protect its citizens from discrimination by other states." 720 F.2d at 1168-69.

*Muzingo v. Vaught,* 18 Kan. App. 2d 823, 859 P.2d 977 (1993), closely parallels the reasoning of *Conner* on this issue. In *Muzingo*, the Kansas Court of Appeals rejected the argument that the Kansas borrowing statute could be interpreted to enlarge the Kansas limitations period. Nearly 5 years after a boating accident in Missouri, the Muzingos sued Vaught in Kansas for property damage and personal injury. All parties were Kansas residents. The Kansas limitations period for the tort action was 2 years. The Muzingos contended that Missouri's 5-year statute of limitations applied. They urged the Court of Appeals to interpret Kansas' borrowing statute to borrow the Missouri statute of limitations. The Kansas Court of Appeals affirmed the dismissal of the action as barred by the Kansas statute of limitations.

Starting from the premise that the Kansas rule for limitation of actions is that the forum's law governs, the Court of Appeals considered whether Missouri's limitations period should be invoked by virtue of application of the Kansas borrowing statute. The Court of Appeals gave some background on borrowing statutes:

"A number of states have enacted statutory exceptions to the common-law rule that the forum applies its own statute of limitations to actions before it. These statutes are commonly referred to as 'borrowing statutes,' which to varying degrees change the common-law rule governing choice of the applicable statute of limitation. See Leflar, American Conflicts Law § 128, p. 256 (3d ed. 1977). Borrowing statutes attempt to promote uniformity of limitation periods and to discourage forum shopping by requiring the trial court to 'borrow' the statute of limitations

of the jurisdiction that the legislature has determined bears the closest relationship to the action, usually the jurisdiction where the action arose. *Miller v. Stauffer Chemical Co.*, 99 Idaho 299, Syl. ¶ 3, 581 P.2d 345 (1978)." 18 Kan. App. 2d at 825.

Before discussing the Muzingos' theories, the Court of Appeals observed:

"At the outset, we question whether 60-516 applies to this action because, when filed, the action was not barred in Missouri. Therefore, one of the conditions precedent to the application of our borrowing statute has not been satisfied. See Driscoll, *Some Reflections on the Kansas Borrowing Statute,* 17 Kan. L. Rev. 437, 443 (1969) ('Only when the court has decided that the borrowing statute is applicable should it look to the limitation law of a foreign jurisdiction'). As the Muzingos ignore this threshold question and argue their interpretation of 60-516 operates to save their action, we too will interpret the statute." 18 Kan. App. 2d at 826.

The Court of Appeals held:

"K.S.A. 60-516 permits *residents* to file actions in this state which arise in foreign states, although the actions would be untimely filed in the foreign states. However, when filed in this state, the action must be timely filed under this state's applicable statute of limitations. Another state's statute may not be used to extend the Kansas limitations period—to make timely an action barred by Kansas law." (Emphasis added.) 18 Kan. App. 2d 823, Syl. ¶ 5.

"As a general rule, statutes of limitations are procedural in nature. Where the statute sued upon creates the right and incorporates a limitation period for suit, the time restriction qualifies the right and becomes substantive in nature. Under this circumstance, the second exception to the common-law rule—that the forum applies its own statutes of limitations to actions before it—applies." 18 Kan. App. 2d 823, Syl. ¶ 6.

For the rule that the borrowing statute was intended not to enlarge but in certain circumstances to shorten the period of limitation, the Court of Appeals cited *Newell v. Harrison Engineering & Const. Corp.*, 149 Kan. 838, 841, 89 P.2d 869 (1939). 18 Kan. App. 2d at 826.

It is apparent from *Conner* and *Muzingo* that borrowing statutes typically permit the foreign limitations period to be borrowed only to the extent that it shortens the limitations period of the forum. In *Conner*, even though the applicable Idaho limitation was the 2-year statute of limitations extended by Idaho's tolling provision, the tolling provision was given no effect because it would have length-

ened the period beyond that of the forum. In *Muzingo*, the applicable Missouri statute of limitations was given no effect because it would have lengthened the period beyond that of the forum.

As noted by the heirs, *See* is a current expression of this court's inclination to give effect to the saving statute over one of limitation. We find it controlling as to this question. We concluded in *See*

"that once an action is timely filed under the provisions of a so-called ordinary statute of limitations or within the applicable time limitations of a repose statute, such as K.S.A. 60-513(b) or (c), the action is then subject to the savings provision of K.S.A. 60-518." 257 Kan. at 823.

Here, since the cause of action arose in Colorado, K.S.A. 60-516 mandates that we first determine if the action is time barred under the Colorado statute of limitations. As previously noted, the Colorado statute of limitations is 2 years, the same as that of Kansas. Once it is determined that the action was not time barred in Colorado, there is no further need to look to Colorado law. The first filing being timely, Kansas jurisdiction attaches at that time, and the timeliness of the subsequent filing is to be determined under the saving provision of K.S.A. 60-518, not K.S.A. 60-516. The original filing in the Kansas district court was timely under both Colorado and Kansas statutory limitations; thus, under K.S.A. 60-518, the second filing in the United States District Court was also timely. Therefore, the answer to Certified Question No. 1 is "no."

## Question No. 2

Whether the Kansas saving statute, K.S.A. 60-518, saves wrongful death actions.

In addition to accepting Learjet's argument that the effect of the Kansas borrowing statute barred the second action, the federal district court granted defendant's motion for summary judgment on the ground that the second action was barred by the precedent of *Rodman v. Railway Co.*, 65 Kan. 645, 70 Pac. 642 (1902). Because no right of action for damages for wrongful death existed at common law and the Kansas statute creating the right of action imposed the condition that an action be commenced within 2 years, the limitations period was "unaffected" by the saving statute. 65 Kan. at 654. The court stated its rule as follows:

"Section 422 of the civil code (Gen. Stat. 1901, § 4871) creates a right of action for damages for death by wrongful act which did not exist at common law and which does not obtain in the absence of such act. The limitation of two years prescribed in the act in which such action must be commenced is a condition imposed upon the exercise of the right of action granted, and this time is not extended by the pendency and dismissal of a former action, as provided in section 23 of the code (Gen. Stat. 1901, § 4451)." 65 Kan. 645, Syl. ¶ 2.

Since this court considered *Rodman* and *Hodge v. Hodge,* 191 Kan. 390, 381 P.2d 329 (1963), the legislature removed the limitations provision from the wrongful death statute and relocated it in Article 5, Limitations of Actions, of Chapter 60, Code of Civil Procedure, along with other limitations laws. As we have seen, the limitation period for an action for wrongful death is now included in K.S.A. 60-513(a)(5) among the actions which must be brought within 2 years. The wrongful death provisions now are located in Chapter 19, Wrongful Death Actions, of Chapter 60. No limitations period is stated in the wrongful death provisions. K.S.A. 60-1901 *et seq.*

The heirs contend that the legislature's intent to subject wrongful death actions to the general limitations provisions, including the saving statute, is evident from its severing the limitations provision from the statute which created the right of action. Learjet contends that the relocation is of no significance because it does not change the fact that the wrongful death statute(s) created the remedy and established the time in which a proceeding had to be commenced in order for relief to be available.

Examination of K.S.A. 60-501 and Gard's commentary on the saving statute supports the view of the heirs. K.S.A. 60-501 provides: "The provisions of this article govern the limitation of time for commencing civil actions, except where a different limitation is specifically provided by statute." The limitation for an action for wrongful death now is expressly included in Article 5 of Chapter 60; the limitation is no longer "specifically provided by [the] statute" which creates the right of action. After the 1963 relocation, Gard wrote with respect to K.S.A. 60-518:

"It has been held inapplicable to actions for wrongful death. *Bowles v. Portelance,* 145 K[an.] 940, 67 P.2d 419 [(1937)]. This was for the reason that the two-

year provision in the death statute had been held to be a condition for the maintenance of the action for wrongful death and not a statute of limitation. Now that the two-year period of limitation under section 60-513 has been made expressly applicable to death cases a different result may be expected." 1 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-518 (1979), Comment, p. 37.

Although the rule from *Rodman* has not been expressly overturned, there are several Kansas cases in which its demise seems to have been assumed by the court and the parties alike. As the heirs would have it, "[t]he saving statute's application to death actions is so obvious that it has not been challenged."

In *Frost v. Hardin*, 1 Kan. App. 2d 464, 571 P.2d 11 (1977), *aff'd* 224 Kan. 12, 577 P.2d 1172 (1978), the Court of Appeals considered the question whether a wrongful death action brought by decedent's sons after they reached majority was barred by their mother's earlier abortive action. The Court of Appeals concluded: "Defendants have a good statute of limitations defense against any claim by Mrs. Frost, but that does not bar these plaintiffs. They are given the right by statute to bring the action in their own names, and that right was preserved to them by statute during their respective minorities." 1 Kan. App. 2d at 471. This court "approve[d] and adopt[ed] the opinion of the Kansas Court of Appeals as written." 224 Kan. 12. Thus, this court adopted the view of the Court of Appeals that the minors' tolling provision in K.S.A. 60-515(a) applied to preserve the sons' claim. According to the heirs in the present case, this aspect of *Frost* confirms the statutory construction which they advocate "because, if the 'tolling' statute in Article 5 applies to death actions, there is no reason the savings statute also does not." Learjet's only comment on *Frost* is that the reference to the saving statute in the opinion "is pure dictum." The heirs' position, however, depends on the saving statute's being analogous to the minors' tolling provision rather than its being specifically mentioned.

In *Beck v. Kansas Adult Authority*, 241 Kan. 13, 735 P.2d 222 (1987), the court considered personal injury, wrongful death, and survival actions by the heirs of two victims and one of the witnesses to a shooting incident. The actions were timely filed in federal district court in Kansas, subsequently dismissed, and filed in state

court within 6 months of the dismissal. After reciting this procedural history, the court stated: "Although more than two years elapsed between the time of the shooting and the commencement of these actions, they were timely filed. K.S.A. 60-518." 241 Kan. at 15. Learjet categorizes this reference to the saving statute as "dictum," not pure dictum.

Learjet's principal argument is that any discussion of *Rodman* and the 1963 revision of Kansas civil procedure provisions and subsequent Kansas cases is irrelevant because the wrongful death right of action exercised by the heirs in the present case was created by Colorado statute rather than Kansas statute. It follows, according to Learjet, that the real question is whether "the Kansas [saving] statute may properly revive a time-barred *Colorado* wrongful death claim, a cause of action which exists and is defined only by Colorado statute."

Learjet cites several cases for the proposition that Colorado's saving statute does not apply to Colorado wrongful death claims. Rather than disputing the contention that these cases stand for the proposition asserted, the heirs, by ignoring the cited cases, seem to be indicating that the inquiry into application of the Colorado saving statute is irrelevant. We agree. That question is not before us, nor is it self-evident, as Learjet seems to assume, that examining cases involving the Colorado saving statute and the Colorado wrongful death statute would be useful for the purpose of determining whether this court should apply the Kansas saving statute to a wrongful death action which arose in Colorado.

In *Rodman*, this court held that the saving statute did not apply to a wrongful death action. It did so because the wrongful death action is a creature of statute and, as such, the 2-year limitation written into the statute was a condition of the action and must be strictly complied with. Although, generally, limitations on bringing an action are considered to be procedural, where the limitation is part of the statute creating the cause of action, the limitation becomes substantive, and the saving statutes do not apply. By removing the 2-year time limitation from the wrongful death statute and placing it in K.S.A. 60-513(a)(5), the basis for this court's decision in *Rodman* no longer exists. Thus, we need not overrule

*Rodman,* because it simply does not apply to the changed circumstances. K.S.A. 60-518 does apply to a wrongful death action, and we therefore answer Question No. 2 in the affirmative.

### Question No. 3

Whether the Kansas saving statute saves actions which the Kansas borrowing statute otherwise would bar.

In the federal district court the heirs argued that "even if the borrowing statute applies to incorporate Colorado's limited savings statute, the barred action would nonetheless be subject to revival under 60-518." It was in connection to this argument of the heirs that the federal district court concluded that the Kansas borrowing statute would defeat the Kansas saving statute because it was the more specific.

Here, the heirs suggest that the court's task is to reconcile the borrowing and saving statutes so that they are consistent and harmonious. They also note that the saving statute, because remedial, "should be liberally construed, with a view of carrying into effect the purpose of the legislature." *Denton v. Atchison,* 76 Kan. 89, 92, 90 Pac. 764 (1907). The heirs' proposed method of reconciling the borrowing and saving statutes and giving effect to both is as follows: "[T]he borrowing statute applies to an action when it is first filed, and the saving statute applies to any action filed within six months of a voluntary dismissal."

Our response to Question No. 1 essentially renders Question No. 3 moot. As we stated there, *See* is controlling, even though the borrowing statute was not under consideration. In *See,* we stated that the saving statute " 'is intended to give a party who within the proper time brought an action which was disposed of otherwise than upon the merits after the statute of limitations had run [6 months] of grace in which to reinstate his case and obtain a determination upon the merits.' " 257 Kan. at 822 (quoting *Denton v. Atchison,* 76 Kan. 89, 91, 90 Pac. 764 [1907]). In order to give effect to the purpose of the legislature in enacting the saving statute as well as the statute of repose, the court "conclude[d] that once an action is timely filed under the provisions of a so-called ordinary statute of limitations or within the applicable time limitations of a

repose statute, . . . the action is then subject to the savings provision of K.S.A. 60-518." 257 Kan. at 823. The court added: "The first action, having been timely filed, was subject to the savings provision of K.S.A. 60-518, and therefore the second action was also timely and not barred by [the statute of repose]." 257 Kan. at 823. In the present case, the first action, having been timely filed under both the Kansas and Colorado limitations laws, was subject to the Kansas saving statute, and therefore the second filing was also timely.K.S.A. 60-516, the borrowing statute, is not applicable to the second filing.

As noted in *Muzingo*, the borrowing statute operates only when the action would be time barred in the foreign state. Since the first filing was not time barred under Colorado limitations, K.S.A. 60-516, the borrowing statute, performed its function and thereafter the Kansas saving statute would be applied if effective in the circumstances. Here, it was effective to save the action in the United States district court. Our conclusion that K.S.A. 60-516 does not apply to the subsequent filing in the United States district court renders Question No. 3 moot.