No. 104,294

SEABOARD CORPORATION, *Appellee*, v. MARSH INC., MARSH USA
INC., and AMERICAN INTERNATIONAL GROUP, INC., *Appellants*.
(284 P.3d 314)

Opinion filed August 31, 2012.

*J. Nick Badgerow*, of Spencer Fane Britt & Browne LLP, of Overland Park, argued the cause, and *Douglas M. Weem*, of the same firm, and *John J. Miller*, of Swanson Midgley, LLC, of Kansas City, Missouri; *Mitchell J. Auslander*, *Christopher J. St. Jeanos*, and *Joanna Rotgers*, of Willkie Farr & Gallagher LLP, of New York, New York; *Daniel J. Leffell* and *Andrew C. Finch*, of Paul, Weiss, Rifkind, Wharton & Garrison LLP, of New York, New York; and *Kenneth A. Gallo*, of Paul, Weiss Rifkind, Wharton & Garrison LLP, of Washington, D.C., were with him on the briefs for appellants.

*Patrick J. Stueve*, of Stueve Siegel Hanson LLP, of Kansas City, Missouri, argued the cause, and *Rachel E. Schwartz* and *Richard M. Paul III*, of the same firm, were with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: The primary question raised in this appeal is whether the Kansas saving statute, K.S.A. 60-518, applies and saves the plaintiff's action from being barred by the applicable statute of limitation. Under the Kansas saving statute, a plaintiff who timely files a legal action that is dismissed otherwise than on the merits after any applicable statute of limitation has run may file a second legal action within 6 months of the dismissal of the first action without being barred by the statute of limitation.

In this case, the plaintiff argues the saving statute preserved the plaintiff's right to bring this action because the plaintiff was a putative member in a class action that was timely filed against the defendants in another state and all requirements of K.S.A. 60-518 are met. The district court agreed and denied a motion to dismiss in which the defendants had asserted this action was barred by the statute of limitation and not saved by K.S.A. 60-518.

On appeal, the defendants raise two issues. First, they argue the district court erred in concluding the Kansas saving statute applies if the first action is filed in another state. Second, they argue the district court erred in concluding the requirements of the Kansas saving statute were satisfied under the undisputed facts of this case.

Rather, the defendants contend: (a) The class action failed when a federal district court entered an order of dismissal and a subsequent appeal is of no consequence; (b) the dismissal was on the merits, meaning plaintiffs have not satisfied the requirement of K.S.A. 60-518 that the first action "fail[s] . . . otherwise than upon the merits;" (c) this case—the second action—was not filed within 6 months of the dismissal of the class action; (d) the claims and parties in this case are not substantially similar to those in the class action; and (e) the plaintiff was not the named plaintiff in the class action.

We conclude the district court did not err. First, we hold the Kansas saving statute applies even if the first action was filed in another jurisdiction because, among other reasons, the Kansas Legislature drafted the statute to apply to "any action" and did not limit the statute to actions filed in a Kansas state court. Second, we hold the district court correctly concluded the class action met all of the requirements of K.S.A. 60-518, the Kansas saving statute, and the defendants' five subissues are without merit.

## FACTS AND PROCEDURAL BACKGROUND

On October 16, 2009, Seaboard Corporation filed this legal action in the District Court of Johnson County, Kansas, against Marsh Inc., Marsh USA, Inc. (collectively "Marsh"), and American International Group, Inc. ("AIG") (collectively "Defendants"). Seaboard's allegations against Marsh arose from Marsh's conduct as Seaboard's insurance broker, a relationship that began as early as 1990. Seaboard alleges that in the mid-1990's Marsh began entering side agreements with multiple insurance companies that financially rewarded Marsh for steering insurance business to those companies. This practice eventually led to "bid rigging" and, according to Seaboard, inflated noncompetitive premiums for the insurance purchased by Seaboard.

Based on this conduct, Seaboard asserted eight causes of action in its petition against Defendants. These claims can be divided into three categories: (1) tort claims, including claims of faithless servant, fraud, negligent misrepresentation, tortious interference with a prospective business advantage, and civil conspiracy; (2) a stat-

utory claim based on the Kansas Restraint of Trade Act (KRTA), K.S.A. 50-101 *et seq.*; and (3) contract-related claims, including breach of contract and breach of an implied duty of good faith and fair dealing. The district court determined a 2-year statute of limitation applied to the various tort claims, a 3-year statute of limitation applied to the KRTA claims for damages, and a 5-year statute of limitation applied to the contract-related claims. See K.S.A. 60-513(a) (2-year period of limitation applies to various enumerated actions, including an action for fraud and an action for injury to the rights of another, not arising out of contract); K.S.A. 60-512(2) (3-year period of limitation applies to "[a]n action upon a liability created by a statute other than a penalty"); K.S.A. 60-511(1) (5-year period of limitation applies to "[a]n action upon any agreement, contract or promise in writing").

In Seaboard's petition, it did not allege the date on which these various claims accrued but stated that "Marsh, AIG and other insurance carriers, from at least 1998 through at least the end of 2004 . . . engaged in systematic manipulation of bids for insurance." Seaboard also included information in the petition about a civil complaint filed by the New York Attorney General and about criminal indictments arising from the scheme. Regarding the civil complaint, Seaboard noted the allegation was that Marsh, AIG, and others participated in the bid-rigging scheme from 2001 to 2004. According to Seaboard, the criminal indictments against executives and employees of Marsh and AIG arose from conduct during the period of November 1998 to September 2004.

Seaboard addressed the timeliness of its action by alleging that all applicable statutes of limitation had been tolled by Defendants' fraudulent concealment of their unlawful conduct. As a result of this concealment, according to Seaboard, it "did not discover, nor could it have discovered through reasonable diligence, that Defendants and their co-conspirators were violating Kansas law."

Defendants responded to the petition with a joint motion to dismiss. The motion raised several issues, only one of which—the bar of the applicable statutes of limitation—is at issue on appeal. Regarding the statutes of limitation issue, in various briefs and arguments related to the motion to dismiss, Defendants eventually

suggested three time periods during which Seaboard's causes of action accrued: (1) November 2002, the beginning of a policy period for excess casualty insurance that Seaboard purchased after AIG submitted an allegedly rigged bid; (2) October 14, 2004, the date on which the New York Attorney General filed a civil complaint alleging that Marsh participated in bid-rigging schemes with insurance companies, including AIG; and (3) May 2005, when Seaboard chose to pursue its own claim rather than accept a settlement from Marsh that was offered as part of Marsh's global settlement of the New York Attorney General's civil action.

Defendants argued that based on any of these dates, Seaboard's case was barred by the applicable statutes of limitation when this action was filed on October 16, 2009. According to Defendants, even if Seaboard's claim of fraudulent concealment was given credit, Seaboard's tort claims were reasonably ascertainable no later than May 2005, the date Seaboard opted out of Marsh's global settlement. See K.S.A. 60-513(b) (tort claims covered by that statute "shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party"). Consequently, Defendants asserted all tort claims were barred before this action was filed. Defendants also pointed out to the district court that K.S.A. 60-511, which applies to the contract-related actions, does not contain similar language regarding accrual upon the fact of injury becoming reasonably ascertainable and that "[a] cause of action for breach of contract accrues when a contract is breached . . ., irrespective of any knowledge on the part of the plaintiff or of any actual injury it causes." *Pizel v. Zuspann*, 247 Kan. 54, 74, 795 P.2d 42, *modified on other grounds* 247 Kan. 699, 803 P.2d 205 (1990). Consequently, according to Defendants, the statute of limitation for the contract-related claims expired in November 2007. Finally, without parsing the statute of limitation that governs statutory actions, including the KRTA, to determine if a discovery tolling exception applied, Defendants argued that, at the latest, the statute of limitation expired 3 years after May 2005.

Thus, Defendants claim all of Seaboard's claims were barred by the respective statutes of limitation when this action was filed on October 16, 2009.

In reply to Defendants' motion to dismiss, Seaboard argued its petition was timely filed because the action had been preserved by the filing of several class actions against Marsh and AIG that were filed around the time of the New York Attorney General's civil action. To support its arguments, Seaboard filed an affidavit that incorporated pleadings and other documents related to some of the class action proceedings. Seaboard stated it was a putative class member in these class action suits against Defendants. At least one class action, which was not filed in Kansas, was filed within 2 years of November 30, 2002, the earliest of the possible accrual dates.

According to information provided to the Johnson County District Court, as many as 40 class actions against Marsh, AIG, and others were eventually filed in or removed to federal courts. These various class actions were consolidated by the federal Judicial Panel on Multidistrict Litigation; the consolidated case, which we will refer to as the MDL action, was captioned *In Re Insurance Brokerage Antitrust Litigation,* No. 04-5184, MDL No. 1663. The MDL action was transferred to the United States District Court of New Jersey (New Jersey federal court). This action named Marsh, AIG, and others—a total of more than 76 defendants from 22 different insurance/corporate groups—as defendants. The MDL action included causes of action that Seaboard has labeled as breach of contract, breach of fiduciary duty, misrepresentation, deceptive trade practices, unjust enrichment, federal racketeering, and federal and state antitrust violations, including violations of the KRTA. According to Defendants, the federal class action did not include six of the causes of action brought by Seaboard in the present action, including fraud, negligent misrepresentation, breach of implied duty of good faith and fair dealing, breach of contract, tortious interference with a prospective business advantage or relationship, and civil conspiracy.

In a series of orders filed in August and September 2007, the New Jersey federal court dismissed with prejudice the MDL plaintiffs' federal antitrust and racketeering claims, declined to exercise

supplemental jurisdiction over the state law claims, and dismissed the MDL class action in its entirety. See *In re Insurance Brokerage Antitrust Litigation,* Nos. 04-5184, 05-1079, 2007 WL 2892700, at *35 (D. N.J. 2007) (unpublished opinion); *In re Insurance Brokerage Antitrust Litigation,* Nos. 04-5184, 05-1079, 2007 WL 2533989, at *20 (D. N.J. 2007) (unpublished opinion).

The MDL plaintiffs timely appealed the orders of dismissal. In August 2010, the MDL appeal concluded. By that point, the appeal that we are now considering had already been docketed with this court. In the MDL appellate decision, the United States Court of Appeals for the Third Circuit vacated the dismissal of some, but not all, of the federal antitrust and racketeering claims, vacated the dismissal of the state law claims, and remanded the case to the New Jersey federal district court for further proceedings. *In re Insurance Brokerage Antitrust Litigation,* 618 F.3d 300, 383 (3d Cir. 2010).

In this present action, no party disputes that Seaboard was a putative class member of the MDL action. By the time of the Third Circuit's decision, Marsh was no longer a party in the MDL action because it had entered into a settlement agreement with the MDL plaintiffs while the appeal was pending. The settlement agreement contained in the record is dated June 19, 2008. The United States District Court of New Jersey approved the settlement agreement and entered judgment against Marsh on February 17, 2009. AIG was still a defendant in the MDL action, however.

On October 17, 2008, Seaboard opted out of the MDL settlement with Marsh. On that same date, Seaboard entered into a tolling agreement with Marsh in which the parties agreed to toll all statutes of limitation and other time-related defenses and causes of action for 1 year. One day before the expiration of the tolling agreement with Marsh, Seaboard filed the petition in this case in Johnson County District Court. Up to the point in time when Seaboard filed this action, it remained a putative member of the class action against AIG.

Seaboard argued before the Johnson County District Court that its action against Marsh was timely because of the combined effect of the saving statute and the tolling agreement. Although not abun-

dantly clear, it appears Seaboard's position was that the saving statute alone preserved Seaboard's action against AIG on a theory that AIG was still a party to the MDL action in which Seaboard was a putative party on October 16, 2009, when this present action was filed.

Defendants made a multifaceted response arguing that cross-jurisdictional tolling should not be recognized and that there were several reasons the saving statute requirements were not satisfied.

The Johnson County District Court rejected these arguments. The court held that Seaboard's "participation in the commencement of a class action suspended the applicable statute of limitation under K.S.A. 60-512(2) and K.S.A. 60-513(a) until that time when plaintiff opted out of that action on October 17, 2008." The district court then granted Defendants permission to petition the Court of Appeals to allow an interlocutory appeal. Defendants filed a joint application to take an interlocutory appeal. This court transferred the case under K.S.A. 20-3018(c) and granted Defendants' application to bring this interlocutory appeal.

## DISTRICT COURT STANDARD AND APPELLATE STANDARD OF REVIEW

On appeal, there is one aspect of the district court's order with which no party overtly disagrees—the district court's statement of the standard to be applied to its consideration of Defendants' motion to dismiss. Yet, the parties seem to implicitly reject the district court's standard because they all cite to a different standard than the one cited by the district court. Although they cite a different standard, none of the parties criticizes the district court's choice of standard, explains the reason it relies on a different standard, or discusses the justification for the standard it cites. This lack of explanation is troubling because we cannot discern a basis for applying the case all parties cite for the applicable standard—*Wachter Management Co. v. Dexter & Chaney, Inc.*, 282 Kan. 365, 144 P.3d 747 (2006). But the district court did not cite to the correct standard either. To sort this out, we will review the standard applied by the district court, the reasons a different standard should have

been applied, the standard espoused by the parties on appeal, and the standard we apply.

The district court cited two Kansas Court of Appeals decisions for the standard it applied: *Stark v. Mercantile Bank, N.A.*, 29 Kan. App. 2d 717, 720-21, 33 P.3d 609 (2000), and *Colombel v. Milan*, 24 Kan. App. 2d 728, 729, 952 P.2d 941 (1998). These decisions rely on and quote this court's decision in *Ripley v. Tolbert*, 260 Kan. 491, 921 P.2d 1210 (1996).

In *Ripley*, this court held that dismissal for failure to state a claim under K.S.A. 60-212(b)(6) is justified only when the allegations in a petition clearly demonstrate a plaintiff does not have a claim. The court noted that factual disputes cannot be resolved in ruling on a motion to dismiss; instead, the well-pleaded facts of the petition must be read in the light most favorable to the plaintiff. *Ripley*, 260 Kan. at 493.

We have no quarrel with *Ripley*'s recitation of the standard that typically applies to consideration of a motion filed under K.S.A. 60-212(b)(6). The problem is that standard does not apply to the procedural circumstances of this case because the district court relied on facts that were not alleged in the petition or stated in other pleadings. In particular, the district court based its decision on the effect of the MDL action. The facts regarding the MDL action were presented in Seaboard's response to the motion to dismiss. In the response, Seaboard stated facts in a summary judgment format with separately numbered paragraphs that were supported by citations to an affidavit and attachments to the affidavit. See Supreme Court Rule 141 (2011 Kan. Ct. R. Annot. 232).

Because the district court's ruling on the motion to dismiss depended on the dates and other information gleaned from these documents rather than from information in the pleadings, at the time the motion in this case was submitted to the district court, K.S.A. 60-212(b) required the motion to be treated as one for summary judgment by stating:

"If, on a motion asserting the defense provided in subsection (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment and disposed of as provided in

K.S.A. 60-256 and amendments thereto, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by K.S.A. 60-256 and amendments thereto."

See K.S.A. 60-207(a) (defining allowed "pleadings" as various forms of petitions and answers).

Before the district court, Seaboard argued the Defendants' motion to dismiss should be treated as a motion for summary judgment. Defendants did not object to the court's consideration of the additional information; in fact, Defendants used the additional information to build arguments as to why Seaboard's action had not been preserved or tolled. Further, Defendants did not controvert any of the separately numbered statements of fact offered by Seaboard. Then, in the joint application for permission to take an interlocutory appeal, Defendants stated that "[t]he briefs filed by the parties . . . made clear that there are no disputed issues of fact in connection with Defendants' statute of limitations arguments."

Yet, in their brief to this court, Defendants cite to the motion to dismiss standard discussed in *Wachter Management Co.*, 282 Kan. 365. Seaboard, as appellee, does not reassert its position regarding summary judgment; rather, it acquiesces to Defendants' reliance on *Wachter Management Co.* In doing so, the parties fail to recognize the application of K.S.A. 60-212(b)(6)'s summary judgment requirement or to recognize that *Wachter Management Co.* concerned the standard for a K.S.A. 60-212(b)(3) motion, which is not subject to K.S.A. 60-212(b)(6). Under K.S.A. 60-212(b)(3), it was appropriate for the *Wachter Management Co.* court to consider affidavits while applying a motion to dismiss standard. *Wachter Management Co.*, 282 Kan. at 368; *cf. Aeroflex Wichita, Inc. v. Filardo*, 294 Kan. 258, Syl. ¶ 2, 275 P.3d 869 (2012) (when a defendant's K.S.A. 2011 Supp. 60-212[b][2] motion to dismiss for lack of personal jurisdiction is decided before trial on the basis of the pleadings, affidavits, and other written materials without an evidentiary hearing, any factual disputes must be resolved in the plaintiff's favor).

Ultimately, however, this difference in the applicable standard does not impede our ability to review the district court's decision. The district court treated the additional facts just as they were

presented by the parties—as uncontroverted—and considered issues of law based on these uncontroverted facts regarding the interpretation and application of the Kansas saving statute.

This is consistent with the standard that applies to motions for summary judgment:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules[,] and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citations omitted.]" *Shamberg, Johnson & Bergman, Chtd. v. Oliver,* 289 Kan. 891, 900, 220 P.3d 333 (2009).

See *Thomas v. Shawnee County Comm'rs,* 293 Kan. 208, 227, 262 P.3d 336 (2011) (when considering summary judgment motion, district court must consider evidence in light most favorable to nonmoving party). This standard should have been applied by the district court and is the standard we apply in this appeal.

Another consideration applies to our standard of review because our analysis requires us to interpret the Kansas saving statute, K.S.A. 60-518. Interpretation of a statute is a question of law over which this court has unlimited review. Thus, this court is not bound by the district court's interpretation of K.S.A. 60-518. See *Osterhaus v. Toth,* 291 Kan. 759, 789, 249 P.3d 888 (2011).

## KANSAS SAVING STATUTE, K.S.A. 60-518

We begin our analysis by generally considering the provisions of the Kansas saving statute, K.S.A. 60-518, which is critical to the viability of Seaboard's claims. The statute provides:

"If any action be commenced within due time, and the plaintiff fail in such action otherwise than upon the merits, and the time limited for the same shall have expired, the plaintiff, or, if the plaintiff die, and the cause of action survive, his or her representatives may commence a new action within six (6) months after such failure."

K.S.A. 60-518 is a saving statute. As this court explained in *Denton v. Atchison*, 76 Kan. 89, 91, 90 Pac. 764 (1907), "[t]he general periods of limitation are not changed by [the saving] provision, but it is intended to give a party who brought an action in time, which was disposed of otherwise than upon the merits after the statute of limitations had run, a [period] of grace in which to reinstate his case and obtain a determination upon the merits." Accord *Smith v. Graham*, 282 Kan. 651, Syl. ¶ 5, 147 P.3d 859 (2006); *Rogers v. Williams, Larson, Voss, Strobel & Estes*, 245 Kan. 290, 292, 777 P.2d 836 (1989). The *Denton* court concluded that the saving statute "is remedial, and should be liberally construed, with a view of carrying into effect the purpose of the legislature." *Denton*, 76 Kan. at 92. These concepts were endorsed and applied in a case that serves as the basis for Seaboard's arguments, *Waltrip v. Sidwell Corp.*, 234 Kan. 1059, 678 P.2d 128 (1984).

In *Waltrip*, this court considered whether the Kansas saving statute applies in the circumstance where the first lawsuit was a class action and the second lawsuit was filed by a plaintiff not named in the class action but who had been putative members of the class. After the class action was dismissed by the Sedgwick County District Court because of a failure to meet the numerosity requirement of K.S.A. 60-223(a)(1), the second, individual action was filed in Comanche County District Court. The Comanche County District Court found the claims to be time barred under the applicable statutes of limitation and granted the defendants' motion for summary judgment. The *Waltrip* plaintiffs appealed, arguing, among other claims, that the applicable statutes of limitation were tolled during the pendency of the class action. They maintained their individual action was timely filed under K.S.A. 60-518. *Waltrip*, 234 Kan. at 1060-61.

The *Waltrip* plaintiffs' arguments were based on the United States Supreme Court's holding in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554, 558, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974), where the Court applied the "judicial power to toll statutes of limitation in federal court" and determined that "commencement of a class action lawsuit suspends the applicable statute of limitations as to all asserted members of the class who would

have been parties had the suit been permitted to continue as a class action." After the *American Pipe* decision, the Supreme Court clarified in *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353-54, 103 S. Ct. 2392, 76 L. Ed. 2d 628 (1983), that the *American Pipe* tolling rule applied to all members of a putative class, not just those who actually intervened in the class action.

The *Waltrip* court looked to these United States Supreme Court decisions for guidance "because of the substantial similarity between K.S.A. 60-223 [class actions] and Fed. R. Civ. Proc. 23 [class actions]." *Waltrip*, 234 Kan. at 1061. In doing so, the *Waltrip* court adopted the rationale of both *American Pipe* and *Crown, Cork & Seal* for the limited purpose of "determining the *status* of potential members of a class in a Kansas class action." *Waltrip*, 234 Kan. at 1063. Yet, the court declined to adopt the rationale when determining "what *rights* were preserved by the filing of" the class action. *Waltrip*, 234 Kan. at 1063. The court reasoned the similarities between the federal and state class action rules did not extend to the law regarding statutes of limitation, where Kansas' statutes regarding limitation periods, including the Kansas saving statute, governed rather than the judicial tolling powers adopted by the federal court.

The *Waltrip* court noted that Kansas does "not have any 'tolling' provisions which apply during the pendency of an action." *Waltrip*, 234 Kan. at 1064. Instead, the court noted, the Kansas Legislature enacted K.S.A. 60-518, which the court clarified "is a saving statute and not a tolling statute." *Waltrip*, 234 Kan. at 1064 (citing *Howard v. State Highway Commission*, 181 Kan. 226, 228, 311 P.2d 313 [1957]). The *Waltrip* court explained the distinction:

"The generally accepted result of a tolling provision is that the statute of limitations does not begin to run, or if begun, is interrupted due to certain factual circumstances. See K.S.A. 60-517. On the other hand, K.S.A. 60-518 does not stop or toll the running of the statute but preserves or saves to the plaintiff six months to file a second action if the statute of limitations has run during the pendency of the first action and that action is dismissed otherwise than on the merits. *Jackson v. Oil & Gas Co.*, 115 Kan. 386, 222 Pac. 1114 (1924); *Denton v. Atchison*, 76 Kan. 89, 91, 90 Pac. 764 (1907)." *Waltrip*, 234 Kan. at 1064-65.

Because of the differences between Kansas law and the judicial tolling provisions applied by the Supreme Court, the *Waltrip* court

concluded putative class members could use the Kansas saving statute, but they could not take advantage of the tolling principles of *American Pipe* and *Crown, Cork & Seal. Waltrip*, 234 Kan. at 1063. These differences did not impact many of the other aspects of the rationale of the *American Pipe* and *Crown, Cork & Seal* decisions, however, leading the *Waltrip* court to borrow several principles. For example, the *Waltrip* court agreed that "[o]ne of the principal purposes of class action litigation is to avoid a multiplicity of actions when conditions exist that will allow all claims of numerous potential plaintiffs to be determined in a single action." The court then concluded:

"To accomplish this purpose it is obvious that the rights of potential members of the class must be preserved pending the determination of whether the court certifies the action as a class action under K.S.A. 60-223(c)(1). We hold that the right of all putative members of a proposed class in an action filed pursuant to K.S.A. 60-223 to file a separate action is *preserved pending the determination of whether the initial case shall be maintained as a class action.* If the court refuses to certify the class on the basis of a lack of numerosity (K.S.A. 60-223[a][1]), . . . then the potential members of the class are in the same position for the purposes of filing separate actions as if they had been named plaintiffs in the original action. . . . As pointed out in both *American Pipe* and [*Crown, Cork & Seal*], *the pendency of the initial action preserves the rights of potential class members* under the applicable statute of limitations." (Emphasis added.) *Waltrip*, 234 Kan. at 1064.

The *Waltrip* court also noted that interpreting the word "plaintiff" in K.S.A. 60-518 to include putative members of a class was consistent with the purposes of statutes of limitation, which are " 'intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights.' " *Waltrip*, 234 Kan. at 1063 (quoting *Crown, Cork & Seal*, 462 U.S. at 352).

Under the facts in *Waltrip*, the court concluded the rights of the *Waltrip* plaintiffs were preserved under K.S.A. 60-518 during the pendency of the class action. The court stated: "The determination that the proposed class . . . would not be certified as a class was tantamount to a dismissal otherwise than on the merits as to these plaintiffs." *Waltrip*, 234 Kan. at 1065. Because the class action was filed prior to the expiration of the applicable statutes of limitation and the *Waltrip* plaintiffs filed their individual action within 6

months of the denial of class certification, their action was timely. *Waltrip*, 234 Kan. at 1065.

Seeking application of the holding in *Waltrip*, Seaboard notes that Defendants have not disputed Seaboard's status as a putative class member of the MDL lawsuit. Consequently, under the rationale of *Waltrip*, Seaboard asserts its action against Defendants was preserved during the pendency of the MDL lawsuit.

Defendants disagree, raising the issues we previously outlined: (1) The district court erred in concluding the Kansas saving statute applies even if the first action is filed in another state and (2) the district court erred in concluding the requirements of the Kansas saving statute were satisfied under the undisputed facts of this case.

## K.S.A. 60-518 Applies to Any Action

First, Defendants argue this court should reject the application of the Kansas saving statute, K.S.A. 60-518, to situations where the first action was filed in a court other than a Kansas state court. To make this argument, Defendants look to cases from other jurisdictions addressing "cross-jurisdictional tolling," meaning tolling of one jurisdiction's statute of limitation under *American Pipe* where the first action, a class action, was filed in a different jurisdiction. Defendants assert there are three valid policy reasons for rejecting cross-jurisdictional tolling: (1) cross-jurisdictional tolling under *American Pipe* would undermine state sovereignty, see, *e.g.*, *Wade v. Danek Medical, Inc.*, 182 F.3d 281, 288 (4th Cir. 1999); *Portwood v. Ford Motor Co.*, 183 Ill. 2d 459, 466, 701 N.E.2d 1102 (1998); (2) cross-jurisdictional tolling under *American Pipe* would encourage forum shopping, see, *e.g.*, *Portwood*, 183 Ill. 2d at 465; *Ravitch v. Pricewaterhouse*, 793 A.2d 939, 944 (Pa. Super. 2002); *Maestas v. Sofamor Danek Group, Inc.*, 33 S.W.3d 805, 808 (Tenn. 2000); and (3) cross-jurisdictional tolling under *American Pipe* provides no benefit to states in the management of their own court systems; see, *e.g.*, *In re Urethane Antitrust Litigation*, 663 F. Supp. 2d 1067, 1082-83 (D. Kan. 2009); *Portwood*, 183 Ill. 2d at 466-67.

Defendants also rely heavily on a local district court decision, *Todd v. F. Hoffman-LaRoche, Ltd.*, No. 98CV4574 (Kan. D. Ct. 2004). There, the Wyandotte County District Court considered

whether filing a class action in the District of Columbia Superior Court tolled the statutes of limitation in Kansas under *Waltrip* and *American Pipe*. The district court noted the decisions in *Portwood*, *Ravitch*, *Maestas*, and *Wade* and those courts' policy reasons for rejecting cross-jurisdiction tolling. The district court opted to follow those courts' lead and rejected cross-jurisdiction tolling. *Todd*, No. 98CV4575, at *7-9.

Defendants ask this court to "join the majority of jurisdictions that have considered this issue and . . . hold that K.S.A. 60-518 does not apply on a cross-jurisdictional basis." Defendants further assert that "any decision to expand and import federal tolling principles into the Kansas saving statute should be a legislative, not judicial, one."

Seaboard, on the other hand, notes that several jurisdictions have adopted cross-jurisdictional tolling and, in doing so, have generally rejected the concerns expressed by those jurisdictions that have declined to apply cross-jurisdictional tolling and have relied instead on the efficiency and notice purposes the United States Supreme Court identified in *American Pipe* and *Crown, Cork & Seal*. See, e.g., *Lee v. Grand Rapids Bd of Ed*, 148 Mich. App. 364, 384 N.W.2d 165 (1986); *Hyatt Corp. v. Occidental Fire & Cas.*, 801 S.W.2d 382, 389 (Mo. App. 1990); *Stevens v. Novartis Pharmaceuticals Corp.*, 358 Mont. 474, 478, 247 P.3d 244 (2010); *Staub v. Eastman Kodak Co.*, 320 N.J. Super. 34, 58, 726 A.2d 955 (1999); *Vaccariello v. Smith & Nephew*, 94 Ohio St. 3d 380, 381-83, 763 N.E.2d 160 (2002).

More fundamentally, Seaboard stresses that "[d]efendants' reliance on cross-jurisdictional tolling decisions . . . is nothing more than a red herring." In making this argument, Seaboard points out that *Todd* and the other decisions upon which Defendants' rely are based on cross-jurisdictional *tolling* under *American Pipe*, but tolling was not the basis for the decision in *Waltrip*. In fact, as noted, the *Waltrip* court rejected tolling as a rationale for its holding because it had not been provided for by the Kansas Legislature.

As Seaboard suggests, the issue before us is not how we will apply the court-created *American Pipe* tolling principle. Rather, the question we must determine is whether K.S.A. 60-518 allows

an action to be preserved by commencing a legal action in another jurisdiction. The answer to this question lies in the wording of K.S.A. 60-518 and requires us to interpret the statute.

As always, our statutory analysis must begin with the plain language of the statute. If that language is plain and unambiguous, we do not speculate as to the legislative intent behind it and will not add words to the statute that are not readily found in it. *143rd Street Investors v. Board of Johnson County Comm'rs*, 292 Kan. 690, 698, 259 P.3d 644 (2011). Policy concerns, such as those suggested by Defendants, are issues for the legislature, not this court. See *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs.*, 290 Kan. 446, 460, 228 P.3d 403 (2010).

As we examine the language of K.S.A. 60-518, the words that are critical to this issue are among the first: "If *any action* be commenced within due time." (Emphasis added.) Defendants' position requires us to add words to this phrase, making it read: If any action *filed in a Kansas state court* be commenced within due time. . . . To justify the addition of these words, Defendants note that the *Waltrip* court recognized that "the right of all putative members of a proposed class in an *action filed pursuant to K.S.A. 60-223* to file a separate action is preserved pending the determination of whether the initial case shall be maintained as a class action." (Emphasis added.) *Waltrip*, 234 Kan. at 1064.

While the *Waltrip* holding was narrowly worded, nothing in the decision suggests the court purposefully excluded cases filed in other jurisdictions from the operation of the saving statute. Rather, the court merely limited the holding to the facts before it. Further, this court has indicated that the Kansas saving statute is not limited to actions first filed or dismissed in Kansas, although the opposite view has been stated in at least one case. Compare *Behen v. Street Railway Co.*, 85 Kan. 491, 118 Pac. 73 (1911) (indicating cross-jurisdictional filing not an impediment to application of saving statute); with *Jackson v. Prairie Oil & Gas Co.*, 115 Kan. 386, 222 Pac. 1114 (1924) (suggesting first action must have been filed in Kansas). In addition, decisions of the Tenth Circuit Court of Appeals and our Court of Appeals have applied K.S.A. 60-518 even though the first action was filed in a different state. *E.g., Garcia v. Inter-*

*national Elevator Co., Inc.*, 358 F.3d 777 (10th Cir. 2004); *Prince v. Leesona Corp., Inc.*, 720 F.2d 1166 (10th Cir. 1983); *Campbell v. Hubbard*, 41 Kan. App. 2d 1, 201 P.3d 702 (2008). We will discuss these cases in some detail because they provide some guidance on the issue before us, although none of them is controlling because the language regarding the cross-jurisdictional filing is either dictum or relates to different factual circumstances.

In the earliest of these cases, *Behen*, the plaintiff filed an action in Wyandotte County District Court. After the defendant removed the action to federal court, the plaintiff voluntarily dismissed the action without prejudice and then filed a new action in Wyandotte County District Court. Because the statute of limitation had expired before the second action was filed, the defendant challenged the application of the saving statute to the plaintiff's second action on the ground that the Kansas saving statute "has no application to an action which has been pending or been dismissed in any court except a court of this state." *Behen*, 85 Kan. at 493. The *Behen* court rejected this argument, stating:

"True, the provisions of the Code [of Civil Procedure] relate generally to steps taken and to be taken in the courts of this state, and the [saving] statute does not attempt to govern the procedure of the courts of other states, nor that of the federal courts; but it by no means follows, as the defendant argues, that in order to toll the statute the action must be commenced and dismissed in one of the courts of the state. It was the evident purpose of the statute to extend the time within which an action might be brought, where for any reason the plaintiff had failed in a previous action otherwise than upon merits." *Behen*, 85 Kan. at 493-94.

The court's indication that the Kansas saving statute is not limited to actions "commenced and dismissed in one of the courts of the state" suggests the statute would apply to actions first filed in another state or jurisdiction. Yet, because the *Behen* plaintiff's first action was filed in a Kansas state court, we cannot say that *Behen* controls our decision.

The next time this court addressed the question was in dictum in *Jackson*, 115 Kan. 386. In that case, an action originally filed in Oklahoma state court was removed to Oklahoma federal district court. The plaintiff dismissed the Oklahoma action and later filed

an action in Kansas after the statute of limitation had run. To save the action, the plaintiff relied on K.S.A. 60-518. The *Jackson* court held the statute did not apply because the limitation period had not expired when the plaintiff dismissed the case in Oklahoma. Hence, the court concluded, the statute of limitation controlled. In passing, the court noted the defendant's contention that the saving statute would not have applied anyway because the first action had been filed in Oklahoma. The court stated: "This point appears to be well taken. (*Herron v. Miller*, 220 Pac. 36 [Okla.]), though, in view of the conclusion already reached, it is not necessary to pass upon it." *Jackson*, 115 Kan. at 391.

The Oklahoma court that decided the case cited in *Jackson*— *Herron v. Miller*, 96 Okla. 59, 60, 220 Pac. 36 (1923)—gave a two-prong justification for its holding. First, the *Herron* court concluded that "[t]he statutes of limitation of the various states have no extra-judicial effect, and apply only to actions commenced within the state. To express it differently, in determining whether the statute of limitation has run, the law of the forum is the applicable law." *Herron*, 96 Okla. at 60. Second, even though the Oklahoma statute, like Kansas', applied to "any action," the court reasoned the word "commenced" meant "commenced within this state as provided by" the Oklahoma statute defining when an action is commenced. *Herron*, 96 Okla. at 60.

This rationale has several weaknesses. First, as the Fourth Circuit Court of Appeals concluded in rejecting the *Herron* holding, "it is simply untrue that the statute of limitations of a given state never controls the commencement of actions in foreign forums." *Stare v. Pearcy*, 617 F.2d 43, 45 (4th Cir. 1980). For example, under Kansas' borrowing statute, K.S.A. 60-516, the statute of limitation of the jurisdiction where a cause of action arose determines the timeliness of an action filed in Kansas by a non-Kansas resident. Second, the result in *Herron* is contrary to the view that a saving statute is remedial and as such should be liberally construed. *Stare*, 617 F.2d at 45; *LaBarge, Inc. v. Universal Circuits Inc.*, 751 F. Supp. 807, 810 (W.D. Ark. 1990). Third, applying *Herron's* holding requires adding words to the statute so that it would read "commenced within due time under K.S.A. 60-203." The fallacy of re-

strictively reading the word "commencing" as being solely dictated by the state's statutes was explained by our Court of Appeals in *Campbell*, 41 Kan. App. 2d 1.

*Campbell* arose from an action first filed in Arizona and then filed in Kansas after the applicable statute of limitation had run. The issue was not whether the Kansas saving statute did or did not apply, because the first action had been filed in Arizona; rather the court considered whether Arizona or Kansas law determined if the first action had been "commenced" in due time as required by the saving statute. The Court of Appeals concluded that Arizona's procedural law applied to this question, saving the plaintiff's action under K.S.A. 60-518 because Arizona law does not require service of process for an action to be "commenced." *Campbell*, 41 Kan. App. 2d at 5. The court reasoned that to hold otherwise would be contrary to the plain language of K.S.A. 60-518:

"[K.S.A. 60-518] saves actions 'commenced within due time,' and it does not explicitly say 'commenced within due time *under K.S.A. 60-203.*' (Emphasis added.) Thus, it does not explicitly incorporate the requirement that a suit be served within 90 days to be timely commenced. In our mobile society, the possibility that a suit might be filed in one state, dismissed, and refiled in another is not so remote that no one has thought of it. . . . Yet the legislature has not explicitly limited the application of the savings statute to cases in which service of process was obtained within 90 days." *Campbell*, 41 Kan. App. 2d at 5-6.

See *Chatterton v. Roberts*, 44 Kan. App. 2d 22, 26-27, 235 P.3d 1251 (2010) (relying on *Campbell* to hold procedural rules of the forum of the first action control for determining when the first action was "commenced" where plaintiff's first lawsuit was filed in Missouri, dismissed for lack of jurisdiction, and then refiled in Kansas state court under K.S.A. 60-518).

Although the context of the *Campbell* court's consideration of the issue was different from that in *Herron* or this case, the difference in context does not justify reading words into K.S.A. 60-518. Hence, this court's dictum in *Jackson* in reliance on *Herron* is contrary to choice of law principles, the remedial purpose of K.S.A. 60-518, and the plain meaning of K.S.A. 60-518.

Another reason for rejecting *Herron* and *Jackson* was discussed by the Tenth Circuit Court of Appeals in *Prince*, 720 F.2d 1166.

In that decision, the Tenth Circuit applied K.S.A. 60-518, even though the first action had not been filed in Kansas, and stated:

"Absent compelling precedent from a state, we see no reason to follow old [dictum as stated in *Jackson*] when virtually every state has a savings statute and no significant policy would be advanced by holding such a statute inapplicable to actions originally filed in sister states. Defendant here was put on notice of the action in a timely manner and there was no more delay involved than if the action had been filed in the forum state and dismissed there for procedural reasons. Nor would holding that a savings statute is inapplicable to actions filed in sister states further any policy of the forum state to protect its citizens from discrimination by other states." *Prince*, 720 F.2d at 1169.

See *Garcia v. International Elevator Co., Inc.*, 358 F.3d 777, 781 (10th Cir. 2004) (applying *Prince* and K.S.A. 60-518 where plaintiff's first action in Texas state court was dismissed for lack of personal jurisdiction and second action was filed in Kansas federal district court). Significantly, the Tenth Circuit's rationale is consistent with that of the *Waltrip* court—assuring notice to the defendants and preventing a plaintiff from sleeping on his or her rights. *Waltrip v. Sidwell Corp.*, 234 Kan. 1059, 1063, 678 P.2d 128 (1984) (quoting *Crown, Cork & Seal*, 462 U.S. at 352).

The Tenth Circuit's decision in *Prince* and this court's decision in *Jackson* were discussed by this court in *Goldsmith v. Learjet, Inc.*, 260 Kan. 176, 917 P.2d 810 (1996). That case involved a legal action relating to a Colorado plane crash. The plaintiff, who was not a resident of Kansas, filed the action in Kansas state court against a Kansas corporation, dismissed the action, and then refiled in Kansas federal court within the 6-month saving period. The federal action, which was based on diversity jurisdiction, was time barred by Colorado's statute of limitation. The federal district court determined the Kansas borrowing statute, K.S.A. 60-513, required application of Colorado's statute of limitation because the action accrued in Colorado. The court reasoned this also meant that the plaintiffs could not rely on the Kansas saving statute. On appeal, the Tenth Circuit sought this court's guidance on several certified questions, the first of which was " 'whether the Kansas borrowing statute would borrow not only the Colorado statute of limitations, but also the Colorado saving statute as well, thereby precluding the

operation of the Kansas saving statute.' " *Goldsmith*, 260 Kan. at 177, 179.

In answering this question, the *Goldsmith* court noted the conflict between this court's dictum in *Jackson* and the Tenth Circuit's holding in *Prince* but did not resolve it. Ultimately, the *Goldsmith* court ruled the Kansas borrowing statute would not borrow the Colorado saving statute. *Goldsmith*, 260 Kan. at 193. It based this ruling on "this court's inclination to give effect to the saving statute over one of limitation." *Goldsmith*, 260 Kan. at 193 (citing *See v. Hartley*, 257 Kan. 813, 896 P.2d 1049 [1995]). Ultimately, the *Goldsmith* court concluded:

"The first filing being timely, Kansas jurisdiction attaches at that time, and the timeliness of the subsequent filing is to be determined under the saving provision of K.S.A. 60-518, not K.S.A. 60-516. The original filing in the Kansas district court was timely under both Colorado and Kansas statutory limitations; thus, under K.S.A. 60-518, the second filing in the United States District Court was also timely. Therefore, the answer to Certified Question No. 1 is 'no.' " *Goldsmith*, 260 Kan. at 193.

This view reflects the philosophy of liberally construing the Kansas saving statute to effect its remedial goals, a philosophy that is a consistent theme in this court's application of the Kansas saving statute.

Sorting through these cases, we conclude there are several principles that control our decision. First, we apply the plain language of the statute rather than base this decision on the policy reasons that underlie the tolling principle of *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554, 558, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974), especially because we have previously declined to adopt *American Pipe* tolling principles. Second, grafting restrictions on the words "any action" or "commenced," as would be required if we were to hold that the Kansas saving statute applies only to actions originally filed in a Kansas state court, is contrary to our long-established rules of statutory construction. Third, as we stated as long ago as 1911 in *Behen*, the evident purpose of the Kansas saving statute is to extend the time within which an action might be brought if for any reason the plaintiff had failed in a previous action. *Behen*, 85 Kan. at 493-94. With the exception of

*Jackson*, the basis of which is questionable, the decisions of this court lean toward reading K.S.A. 60-518 as written, that is, so it applies to "any action" regardless of whether filed in Kansas or another jurisdiction. Finally, restricting the statute's application to a situation where the first action was filed in a Kansas state court would be contrary to the remedial purpose of the statute.

We hold the Kansas saving statute, K.S.A. 60-518, applies even if the first action was not filed in a Kansas state court.

### SEABOARD'S ACTION MEETS THE REQUIREMENTS OF K.S.A. 60-518

Next, Defendants contend the district court erred in ruling that K.S.A. 60-518 renders Seaboard's claims timely. In making this argument, Defendants focus on several, but not all, of the requirements that must be satisfied in order for K.S.A. 60-518 to apply.

The first requirement imposed in K.S.A. 60-518 is that the first action must have been "commenced within due time." Defendants do not raise an issue regarding this requirement. In other words, there has been no suggestion that the earliest of the class actions in which Seaboard was a putative class member was barred by the applicable statutes of limitation.

Second, for K.S.A. 60-518 to apply, the first action must "fail . . . otherwise than upon the merits." Defendants argue this requirement has not been satisfied. In making this argument, Defendants contend the New Jersey federal district court dismissed the MDL action on the merits when it ruled against the class action plaintiffs on the federal antitrust and racketeering claims and declined to retain jurisdiction over the supplemental state claims. In making this argument, Defendants present two alternatives. Under one, the dismissal—regardless of whether on the merits or not—triggered the beginning of the 6-month grace period of K.S.A. 60-518, making the present case untimely because it was not filed within that 6-month period. In the second alternative, Defendants argue the dismissal was on the merits, meaning Seaboard fails to satisfy the "fails . . . other than upon the merits" condition. In response, Seaboard argues the New Jersey federal district court's action did not trigger the grace period in K.S.A. 60-518 because the decision

was timely appealed and was not a dismissal on the merits of the potential state law claims raised in the present action. To resolve this issue we must consider what, if any, circumstances triggered the grace period of K.S.A. 60-518 and whether there was a failure on the merits. But first we continue our listing of the requirements of K.S.A. 60-518 and the parties' arguments.

The third requirement of K.S.A. 60-518 is that the limitation period must have expired before the first action was filed. This requirement is not at issue on appeal.

The fourth requirement of K.S.A. 60-518 is that the second action must have been filed within 6 months of the failure of the first action in order for K.S.A. 60-518 to apply. Defendants contend Seaboard failed to satisfy this condition. Again, they rely on the date of the New Jersey federal district court's dismissal of the federal claims as the date that triggered the 6-month grace period of K.S.A. 60-518.

Additionally, Defendants argue that Seaboard failed to satisfy two requirements that are implied in K.S.A. 60-518. They suggest that for K.S.A. 60-518 to apply a defendant must have been put on notice. Adequate notice, Defendants argue, requires that the claims in the first and second action be substantially similar and that there be an identity of parties. According to Defendants, neither of these requirements is met. Finally, Defendants argue K.S.A. 60-518 does not apply because Seaboard was not a named plaintiff in the MDL class action.

These arguments present five issues for our consideration: (a) Whether the dismissal of the MDL action triggered the running of the grace period of K.S.A. 60-518; (b) whether the MDL action failed "otherwise than upon the merits"; (c) whether this action—the second action—was filed within 6 months of the failure of the first action; (d) whether there is a requirement that Seaboard's petition be "substantially similar" to the petition or complaint filed in the MDL action and name all the same defendants and, if so, whether these conditions are satisfied; and (e) whether there is a requirement for Seaboard to be a named plaintiff in the first suit.

a. *Did the Dismissal of the MDL Action Trigger the 6-Month Grace Period?*

As we noted, Defendants maintain the dismissal of the MDL action by the New Jersey federal district court in September 2007 is the event we must look to in determining when the 6-month grace period began to run—when it was triggered—and in determining if there was a failure "otherwise than upon the merits." Conversely, Seaboard contends the dismissal was not a triggering event because of the timely appeal and the dismissal of the federal claims, which was largely reversed on appeal, was not a failure of the first action.

In arguing the MDL class dismissal by the New Jersey federal district court was the triggering event that began the grace period of K.S.A. 60-518, Defendants rely "by analogy" on numerous federal decisions addressing the effect of the denial of class certification on tolling under *American Pipe*. For example, in *Culver v. City of Milwaukee*, 277 F.3d 908, 915 (7th Cir. 2002), the court held that "decertification has the same effect on the members of the class, so far as the running of the statute of limitations is concerned, as dismissal of the class action—it is tantamount to dismissal—and so it should be treated the same under Rule 23(e)." Similarly, other courts have reasoned that plaintiffs often do not seek review of a denial of class certification until after final judgment; therefore, "tolling ends when class certification is denied in the trial court." *Stone Container Corp. v. United States*, 229 F.3d 1345, 1355 (Fed. Cir. 2000). The basis for this conclusion, one court explained, is that

"reliance on the possibility of a reversal of the court's certification decision is ordinarily not reasonable. We therefore conclude that continued tolling of the statute of limitations after the district court denies class certification is unnecessary to protect any *reasonable* reliance by putative class members on their former class representatives." *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1381 (11th Cir. 1998).

These cases are not persuasive because the Kansas saving statute does not use "dismissal" as the triggering point. Rather, the grace period of K.S.A. 60-518 is triggered when a plaintiff "fails" in the first action otherwise than on the merits. Thus, unlike these federal cases, it does not matter whether a plaintiff's reliance on an appeal is reasonable or whether class members usually file an appeal.

Also, we note that several federal courts have held that *American Pipe* tolling continues during the pendency of the class action, including while its certification status is on appeal. See *Griffin v. Singletary*, 17 F.3d 356, 360-61 (11th Cir. 1994) (holding that under *American Pipe* and *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 103 S. Ct. 2392, 76 L. Ed. 2d 628 [1983], charge-filing period for individual claims was tolled during the pendency of the class action—"from the time the [class action] lawsuit was filed until this Court published its opinion vacating the order certifying the class"; "[i]nsofar as the individual claims are concerned, putative class members should be entitled to rely on a class action as long as it is pending"); *Edwards v. Boeing Vertol Co.*, 717 F.2d 761, 766 (3d Cir. 1983), *cert. granted, judgment vacated on other grounds by* 468 U.S. 1201, 104 S. Ct. 3566, 82 L. Ed. 2d 867 (1984) (under *American Pipe* and *Crown, Cork & Seal*, individual plaintiff "entitled to rely on the pendency of [class] action so long as it was pending [including appeal]. Any other rule would needlessly proliferate separate lawsuits"); *In re Initial Public Offering Securities Lit.*, 617 F. Supp. 2d 195, 200 n. 20 (S.D. N.Y. 2007) (holding that once class certification is granted, tolling under *American Pipe* continues "through all of the proceedings in the Second Circuit [and ultimately through Supreme Court review if *certiorari* is sought]"; stating, "it remains reasonable for [putative class members] to rely on these actions continuing as class actions and on their inclusion in those class actions unless and until this Court [or a higher court] definitively denies the pending motion for class certification"). The key under these cases is that the *pendency* of the class action, including while on appeal, tolls the applicable statute of limitation.

The rationale of focusing on whether a class action is pending, even on appeal, is consistent with statements in *Waltrip* suggesting it is the "pendency" of the initial action that preserves the rights of potential class members under the applicable statute of limitation. *E.g.*, *Waltrip*, 234 Kan. at 1064. This is further consistent with the fact that a plaintiff cannot "fail" while an appeal is pending because the trial court's ruling is subject to review and could be reversed. Additionally, preserving an action while an appeal is pending is consistent with the rationale of the decision in *Waltrip*,

which was "to avoid a multiplicity of actions when conditions exist that will allow all claims of numerous potential plaintiffs to be determined in a single action." *Waltrip*, 234 Kan. at 1064.

Defendants rely, however, on the *Waltrip* court's statement that the second action must be filed within 6 months "of the trial court's *ruling*" to be timely. (Emphasis added.) *Waltrip*, 234 Kan. at 1065. We do not read this statement as determinative of the effect of an appeal on the question of when an action "fails." Under the facts in *Waltrip*, it was the court's ruling—the dismissal for failing to satisfy numerosity requirements—that triggered the beginning of the 6-month saving period; there was no appeal from that ruling. Hence, the statement reflected the facts before the court, just as in other cases where this court has applied the facts before it and determined there can be events other than a trial court's dismissal that trigger the beginning of the grace period of K.S.A. 60-518, including a plaintiff's voluntary dismissal of a case. *E.g., See v. Hartley*, 257 Kan. 813, 823, 896 P.2d 1049 (1995).

Defendants cite one other case applying K.S.A. 60-518 and holding that the determination of whether an action has failed under the statute is based on a dismissal at the trial court level, not the termination of an appeal. In that case, *Augustine v. Adams*, 88 F. Supp. 2d 1166 (D. Kan. 2000), a federal district court granted summary judgment to some but not all defendants. The plaintiff then voluntarily dismissed the action against the remaining defendant and appealed the summary judgment order to the Tenth Circuit. The Tenth Circuit dismissed the appeal after determining the summary judgment order was not ripe for review because a dismissal of some but not all defendants is not a final, appealable order. *Augustine*, 88 F. Supp. 2d at 1169. The plaintiff then filed a new action in federal court, asserting the same claims against the same parties.

The defendants again sought summary judgment, arguing in part that the action was barred under the applicable Kansas statute of limitation. The federal district court agreed, rejecting the plaintiff's argument that " '[t]he continued pendency of [her] appeal to the Tenth Circuit tolled the statute of limitations' so that the refiling of her complaint was not in violation of the statute of limitations."

*Augustine*, 88 F. Supp. 2d at 1172. The court held "it is the action commenced at the trial court level which must fail 'otherwise than upon the merits' "; thus, dismissal of an appeal for lack of jurisdiction did not trigger the beginning of the 6-month saving period. *Augustine*, 88 F. Supp. 2d at 1173.

*Augustine* is distinguishable from this case, which does not present an issue of whether an appellate court has jurisdiction. Further, in this case both the district court's and appellate court's rulings in the MDL action are merit based. Hence, in contrast to *Augustine*, there is not a question of whether a ruling otherwise than on the merits in an appellate court trumps the district court's ruling on the merits.

Moreover, to the extent *Augustine* stands for the proposition that it is *always* the district court's ruling that triggers the beginning of the 6-month period in K.S.A. 60-518, that holding is contrary to decisions of this court. For example, in *New v. Smith*, 86 Kan. 1, 5-6, 119 Pac. 380 (1911), a case where the court applied a prior, but very similar, version of the saving statute, this court held that the plaintiff had "one year from the filing of the *decision in the supreme court* [that was 'otherwise than upon the merits'] within which to commence a new action." (Emphasis added.) Defendants distinguish *New* on the basis that the plaintiff in that case had no real option but to appeal the district court's order, which would otherwise be binding. A putative class member of the MDL action, however, could file an action on state law claims without appealing the New Jersey federal district court's decision, they argue.

Again, this ignores the plain meaning of K.S.A. 60-518; having options does not mean a plaintiff's action has failed as K.S.A. 60-518 requires. Additionally, Defendants' position ignores the purpose of applying the saving statute to putative class members—avoiding multiple actions—and the repeated statements of this court that it is the *pendency* of the initial action that preserves the rights of potential class members under K.S.A. 60-518. *E.g., Waltrip*, 234 Kan. at 1064; see *Roy v. Young*, 278 Kan. 244, 249, 93 P.3d 712 (2004); see also 5 Gard and Casad, Kansas Law and Practice, Kansas C. Civ. Proc. Annot. § 60-518, p. 53 (4th ed. 2003) (K.S.A. 60-518 saves claims " 'during the pendency of the action

and for six months after the action has ceased to pend for any reason other than a determination on the merits.' "); see also *See*, 257 Kan. at 822 (saving statute " 'is intended to give a party who within the proper time brought an action which was *disposed of* otherwise than upon the merits after the statute of limitations had run [six months] of grace in which to reinstate his case and obtain a determination upon the merits' ").

While these cases do not expressly address the present issue, the message that can be gleaned from them is that it is the *pendency* of the first action that preserves a plaintiff's claims. This interpretation comports with the language of the saving statute. K.S.A. 60-518 provides that plaintiffs have 6 months from the date they "fail" in their first action "otherwise than upon the merits" to commence a new action. The statute says nothing about "dismissal," the key word in the federal cases cited by Defendants, and does not expressly provide that it is failure in the district court that triggers the 6-month grace period.

b. *Otherwise Than on the Merits*

Defendants also cite to a few federal district courts that have concluded that dismissal of a class action on the merits ends tolling under *American Pipe*. See, *e.g., Lloyd v. General Motors Corp.*, 575 F. Supp. 2d 714, 722 (D. Md. 2008). Application of these cases, according to Defendants, establishes that the New Jersey federal district court's dismissal of the federal racketeering and antitrust claims on the merits and its refusal to exercise jurisdiction over the state claims means the MDL action did not "fail . . . otherwise than upon the merits." See K.S.A. 60-518. Such dismissals trigger the beginning of the 6-month grace period provided in the Kansas saving statute, according to Defendants.

We disagree. For many of the same reasons we have discussed, the pendency of the appeal in the MDL action means there was not a failure otherwise than on the merits when the New Jersey federal district court dismissed the MDL class action plaintiffs' federal claims and refused to retain supplemental jurisdiction over the state claims because a timely appeal was taken. Ultimately, it was established the New Jersey federal court's ruling was errone-

ous, at least in large part, and the appellate court reinstated the state claims that overlap with the claims in the present case. In summary, while we do not address a situation such as presented in *Augustine*, 88 F. Supp. 2d 1166, where the appellate court lacked jurisdiction over the appeal, we conclude that generally a district court's ruling cannot be deemed to be a failure on the merits while an appeal is pending.

We further conclude the New Jersey federal district court's dismissal of the MDL action does not mean Seaboard "fail[ed] in such action otherwise than upon the merits" at that point. See K.S.A. 60-518. Rather, the action continued—in other words, was pending—after a timely appeal was filed; the class action plaintiffs, including putative members of the class, had not failed at the point of dismissal because that judgment was not final. The MDL action illustrates this point because the MDL action was ultimately reinstated on many, although not all, claims. Even if the plaintiffs had not succeeded on appeal, there would not have been a completed failure of the action until the appeal ended.

Here, the MDL appeal preserved Seaboard's action and the action against Marsh ended in a manner otherwise than on the merits. While the MDL appeal was pending, Marsh entered into a global settlement with the class action plaintiffs, and Seaboard opted out of the settlement on October 17, 2008.

On appeal, Defendants do not take issue with the proposition that a decision to opt out of a class action can be a dismissal otherwise than on the merits that would trigger the beginning of the 6-month grace period of K.S.A. 60-518. Rather, they argue that circumstance does not apply in this case because the New Jersey federal district court's dismissal of the MDL class action triggered the beginning of the 6-month period and that a decision to opt out of the class cannot start a new 6-month period. Because we have held the dismissal did not trigger the 6-month period and the appeal continued to preserve the rights of the class action plaintiffs, we find no merit to Defendants' argument.

Because Defendants have waived any other arguments regarding the "otherwise than on the merits" requirement, we conclude the 6-month grace period of K.S.A. 60-518 began running as to Sea-

board's claims against Marsh when Seaboard elected to opt out of the global settlement and K.S.A. 60-518 can be utilized because this opt out was a failure "otherwise than upon the merits." See *State v. Raskie*, 293 Kan. 906, Syl. ¶ 5, 269 P.3d 1268 (2012) (issue not adequately briefed is deemed abandoned). Similarly, there was no failure of the claims against AIG because, as we will discuss in more detail, Seaboard effectively opted out of the class action on the same day it filed the present action against AIG.

### c. *Within 6 Months of Such Failure*

The next question we must resolve in determining whether Seaboard's action meets the requirements of K.S.A. 60-518 is whether this present action was filed within 6 months of the failure of the class action. Seaboard exercised its right to opt out of Marsh's global settlement on October 17, 2008. It was almost a year later before Seaboard filed this second action. Consequently, the timeliness of Seaboard's action depends on the combination of the opt out and the tolling agreement with Marsh in which Seaboard and Marsh agreed to toll all statutes of limitation and other time-related defenses and causes of action for 1 year from the date of the agreement. Seaboard filed its present action in district court on October 16, 2009, 1 day before the tolling agreement was set to expire. Defendants do not challenge the propriety of the tolling agreement or Seaboard's combined use of the saving statute and the tolling agreement to make its action timely. Hence, we conclude the action against Marsh was timely filed.

A different analysis is required for AIG because AIG was not a party to the tolling agreement between Seaboard and Marsh. Likewise, AIG was not a party to the settlement agreement. Nevertheless, beyond one parenthetical in their brief, "(and it never entered into such an agreement with AIG)," and one statement in their reply brief, "Putting aside the fact that Seaboard does not explain how its opt-out from the *Marsh* settlement—as opposed to the September 2007 dismissal—could have constituted the relevant failure of the action as against non-settling AIG," Defendants have solely relied on the New Jersey federal district court's dismissal of the MDL action as being the triggering event for the 6-month

grace period for both Marsh *and* AIG. They have presented no alternative argument in the event we decided, as we have, that the dismissal was not the triggering event. Consequently, AIG has abandoned any argument that Seaboard's filing of this action, while the MDL appeal involving AIG was still pending, was not a voluntary opting out of the class action against AIG and the equivalent of a voluntary dismissal. See *Raskie*, 293 Kan. 906, Syl. ¶ 5 (issue not adequately briefed is deemed abandoned). Seaboard's action effectively marked this opt out, meaning this action was filed on the same day the saving period began to run.

Hence, Defendants' argument that Seaboard's action was not filed within the 6-month saving period of K.S.A. 60-518 is without merit.

d. *Substantially Similar*

Next, Defendants argue Seaboard's action is not "substantially similar" to the complaint in the MDL lawsuit, as required for application of K.S.A. 60-518. Defendants maintain that counts III to VIII in Seaboard's petition—fraud, negligent misrepresentation, breach of implied duty of good faith and fair dealing, breach of contract, tortious interference with a prospective business advantage or relationship, and civil conspiracy—were not asserted as causes of action in the MDL lawsuit. As such, Defendants maintain that K.S.A. 60-518 has "no application whatsoever" to Seaboard's petition and, thus, "none of [Seaboard's] claims are saved." Additionally, Defendants argue that because the defendants in the MDL lawsuit and the present action are not "identical," meaning because Seaboard has not named all 76 defendants that were named in the MDL lawsuit, the saving statute does not apply.

Seaboard counters that Kansas law does not require that the original suit and second suit be "identical" for application of the saving statute. Rather, Seaboard asserts that the district court correctly determined that because Seaboard's action and the MDL lawsuit were " 'based upon the same factual occurrences and similar allegations' " Seaboard's action is substantially similar to the MDL complaint.

Defendants rely on *Johnson v. Railway Express Agency*, 421 U.S. 454, 457, 95 S. Ct. 1716, 44 L. Ed. 2d 295 (1975), where the petitioner argued that the running of the statute of limitation for his 42 U.S.C. § 1981 claim was suspended during the pendency of his timely filed administrative complaint with the Equal Employment Opportunity Commission under Title VII because both actions were based on the same facts. The Supreme Court detailed the "independence of the avenues of relief respectively available under Title VII and [§ 1981]" and concluded that the petitioner, in effect, slept on his rights in failing to file a timely independent action under § 1981. *Johnson*, 421 U.S. at 460, 465-66. The Court rejected the petitioner's attempted reliance on *American Pipe*, in part because "the tolling effect given to the timely prior filings in *American Pipe* . . . depended heavily on the fact that those filings involved exactly the same cause of action subsequently asserted." *Johnson*, 421 U.S. at 467. In a footnote rejecting the petitioner's additional argument that the Title VII claim put the defendant on notice of the § 1981 claim, the Court stated: "Only where there is complete identity of the causes of action will the protections suggested by petitioner necessarily exist and will the courts have an opportunity to assess the influence of the policy of repose inherent in a limitation period." *Johnson*, 421 U.S. at 467 n. 14.

As Defendants point out, in a concurring opinion in *Crown, Cork & Seal*, Justice Powell cautioned that the tolling rule announced in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554, 558, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974), should not be read to allow a plaintiff to "raise different or peripheral claims following denial of class status." *Crown, Cork & Seal*, 462 U.S. at 354 (Powell, J., concurring). Justice Powell wrote:

"It is important to make certain, however, that *American Pipe* is not abused by the assertion of claims that differ from those raised in the original class suit. . . . [W]hen a plaintiff invokes *American Pipe* in support of a separate lawsuit, the district court should take care to ensure that the suit raises claims that 'concern the same evidence, memories, and witnesses as the subject matter of the original class suit,' so that 'the defendant will not be prejudiced.' [Citation omitted.] Claims as to which the defendant was not fairly placed on notice by the class suit are not protected under *American Pipe* and are barred by the statute of limitations." *Crown, Cork & Seal*, 462 U.S. at 355 (Powell, J., concurring).

As with all other issues presented in this case, there is a split of authority among courts addressing what this passage was intended to mean and regarding how similar the two actions must be in order for *American Pipe* tolling to apply. Some courts have required exact identity of claims between the two causes of actions. In most of these cases, the courts' reasoning is based on the state law claims raised in the second action not having been asserted in the original federal class action or vice versa. See, *e.g.*, *In re Copper Antitrust Litigation*, 436 F.3d 782, 794 (7th Cir. 2006) (Cudahy, J., concurring) (change of forum not dispositive in rejection of cross-jurisdictional tolling; problem is state and federal antirust laws create different legal claims); *Card v. Duker*, No. 03-35655, 2005 WL 319400, at *2 (9th Cir. 2005) (unpublished opinion) (*American Pipe* requires identical causes of action; moreover, class action asserted state law claim whereas individual action asserted federal racketeering claim); *In re Urethane Antitrust Litigation*, 663 F. Supp. 2d 1067, 1082-83 (D. Kan. 2009) (noting no efficiency in tolling state statutes of limitation because plaintiffs would need to file individual suits to assert their state law claims regardless of whether the statutes of limitation were tolled). Conversely, other courts have found identity of claims in this class action tolling context to be illogical. *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1489 (9th Cir. 1985) (finding no persuasive authority for identity of claims rule; sufficient that both suits "involved the same allegations"); *Stevens v. Novartis Pharmaceuticals Corp.*, 358 Mont. 474, 485, 247 P.3d 244 (2010) (stating modern pleading rules only entitle defendants to notice of the nature of the claim; defendants' alleged failure to warn, and the injury caused as a result, served as the underpinning for both the class action and plaintiff's individual claim; both actions substantially similar).

Again, the key to this issue is what our court has required under K.S.A. 60-518. Unfortunately, there is sparse guidance in Kansas on this issue. In *Thompson v. Railway Co.*, 102 Kan. 668, 669, 171 Pac. 629 (1918), the court declined to extend application of the Kansas saving statute to the plaintiff because his two cases "were not brought upon the same cause of action." The first action was founded on a contract, while the later one was based in tort. This,

of course, suggests a requirement that the claims be identical. Yet, in a later case, the court said that "[t]he new action must, of course, be *substantially the same* as the action dismissed." (Emphasis added.) *Meyer v. Wilson*, 131 Kan. 717, 720, 239 Pac. 738 (1930). Because both actions in *Meyer* related to the same transaction, charged the same frauds, and both asked for the recovery of damages, the court concluded they were substantially similar. *Meyer*, 131 Kan. at 720. This court has provided little additional guidance on this issue since these early cases. Most subsequent cases have dealt with a difference in the parties involved in the new lawsuits.

The Court of Appeals addressed the issue, however, in *Taylor v. International Union of Electronic Workers*, 25 Kan. App. 2d 671, 677, 968 P.2d 685 (1998). In *Taylor*, the plaintiff attempted to save his time-barred tort action under K.S.A. 60-518 by relying on an action he had previously filed in a different Kansas county and voluntarily dismissed. In deciding that the claims need not be identical for K.S.A. 60-518 to apply, the Court of Appeals looked to this court's decision in a case involving a change of parties, *Rogers v. Williams, Larson, Voss, Strobel & Estes*, 245 Kan. 290, 294, 777 P.2d 836 (1989). Based on its reading of *Rogers*, the Court of Appeals concluded that "the position taken by the Supreme Court is one which requires the actions filed to be 'substantially similar.'" *Taylor*, 25 Kan. App. 2d at 676. The *Taylor* court also noted that a number of other jurisdictions have adopted this substantially similar doctrine. *Taylor*, 25 Kan. App. 2d at 676 (listing jurisdictions).

Despite the lack of clear guidance in our previous caselaw, we are persuaded that the substantially similar test should be applied. There are several considerations that lead us to this conclusion.

First, applying the substantially similar doctrine rather than requiring identical claims is consistent with a liberal construction of K.S.A. 60-518 and furthers its remedial purpose. Under a liberal construction, the key to claim preservation is that both actions arise from the same factual occurrences and that the first action adequately puts a defendant on notice of a plaintiff's purpose. See, e.g., *Griffen v. Big Spring Indep. School Dist.*, 706 F.2d 645, 652-53 (5th Cir. 1983) (plaintiff's federal cause of action saved because it attempted "to vindicate the same rights" as the original action);

*Kulinski v. Medtronic Bio-Medicus, Inc.*, 577 N.W.2d 499, 503-04 (Minn. 1998) (finding in interpreting the language—"a new action"—in Minnesota's saving statute, "a key to determining whether a subsequent action is saved is whether 'by invoking judicial aid [in the original action], a litigant [has] give[n] timely notice to his adversary of a present purpose to maintain his rights before the courts' "); *State v. Litzinger*, 417 S.W.2d 126, 129 (Mo. App. 1967) ("the rule is that only the causes of action in the two petitions must be the same, not the manner in which they are pleaded"); *Stone v. N. Star Steel Co.*, 152 Ohio App. 3d 29, 35, 786 N.E.2d 508 (2003) ("When determining whether the new complaint and the original complaint are substantially the same, a court must determine whether the allegations in the first action gave the defendant fair notice of the type of claims asserted in the second action."); *Chandler v. Denton*, 741 P.2d 855, 863-64 (Okla. 1987) (saving statute preserved plaintiff's second action, which was based on new legal theories, because defendant was put on notice in the first action of the underlying facts from which all claims arose); *Foster v. St. Joseph Hosp.*, 158 S.W.3d 418, 422 (Tenn. App. 2004) (notice to defendant is the true test; it is not necessary that the two complaints be identical, only that the allegations arise out of the same transaction or occurrence).

Second, a focus on whether there was adequate and fair notice is consistent with this court's statement in *Waltrip v. Sidwell Corp.*, 234 Kan. 1059, 1063, 678 P.2d 128 (1984), that the filing of a class action placed the defendants on notice of potential claims and potential plaintiffs. The *Waltrip* court noted Justice Powell's caution in *Crown, Cork & Seal* that both actions should raise "claims that 'concern the same evidence, memories, and witnesses as the subject matter of the original class suit.' " *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 355, 103 S. Ct. 2392, 76 L. Ed. 2d 628 (1983) (Powell, J., concurring). Having sufficient similarity to put a defendant on notice and to be related to the same evidence and witnesses does not require an identity of claims.

Finally, imposing a substantial similarity test comports with notice pleading and places a defendant in essentially the same position a defendant would have been in if the plaintiff had filed the

original action and then filed an amended petition. *Cf.* K.S.A. 60-215(c) (amended claims relate back if the new claims arise "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading").

Consequently, we hold that in order for K.S.A. 60-518 to apply, the second lawsuit need not be identical to the first action as long as the two actions concern the same conduct, transaction, or occurrence and the first action provides adequate notice to the defendant.

Next, we must determine if these requirements are met in this case. Seaboard raised eight causes of action in its petition filed with the Johnson County District Court: (1) violation of the KRTA, K.S.A. 50-101 *et seq.*; (2) faithless servant; (3) fraud based on Marsh's false representation that it was working for Seaboard and in Seaboard's best interests; (4) negligent misrepresentation based on Marsh's false representation; (5) breach of implied duty of good faith and fair dealing by engaging in conduct that destroyed Seaboard's rights to receive the benefits expected under the contract; (6) breach of contract; (7) tortious interference with a prospective business advantage or relationship that prevented Seaboard from receiving a legitimate insurance bid; and (8) civil conspiracy. The MDL lawsuit asserted six causes of action: (1) federal racketeering violations, pursuant to 18 U.S.C. § 1961 *et seq.* (2006); (2) violations of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1; (3) violation of the antitrust laws of 48 states, including Kansas and the District of Columbia; (4) breaches of statutory and common-law-based fiduciary duties; (5) aiding and abetting breach of fiduciary duty; and (6) unjust enrichment. *In re Insurance Brokerage Antitrust Litigation*, Nos. 04-5184, 05-1079, 2007 WL 2892700, at *3 (D. N.J. 2007) (unpublished opinion).

Seaboard argues: "Each and every cause of action pled by Plaintiff in this litigation was specifically alleged in the MDL Complaint, including as predicate acts for the [racketeering] cause of action pled in the MDL Complaint." With regard to its fraud claim, Seaboard states that the MDL complaint listed facts allegedly constituting actionable claims of mail and wire fraud. Seaboard also points to similarities in the allegations regarding misrepresenta-

tions. As to the contract claims, Seaboard points to allegations in the MDL complaint that Marsh breached its contracts with the class action plaintiffs and breached the implied duty of good faith and fair dealing. Finally, Seaboard argues that its civil conspiracy claim, which was based on an allegation of Defendants jointly acting against Seaboard with the intent of preventing Seaboard from receiving legitimate insurance bids, is substantially similar to the KRTA claim and the Sherman Antitrust Act claims in the MDL complaint, which alleged that Defendants shielded their insurer partners from normal bid competition.

The district court concluded that because Seaboard's action was based upon the same factual occurrences and similar allegations as the MDL lawsuit, claim preservation under K.S.A. 60-518 was appropriate. We agree. There is little question that both actions were based on the same underlying allegations of a bid-rigging conspiracy between Marsh and various insurance companies, including AIG. Moreover, while the claims raised in the complaints are not identical, Seaboard has pointed to a substantial similarity between the basic allegations raised in the MDL lawsuit and those raised by Seaboard in the present case to have put the Defendants on notice of the potential claims.

Finally, Defendants argue there is not substantial similarity between the actions because every defendant named in the MDL lawsuit was not named in the present action. To support their argument, Defendants cite *Taylor*, 25 Kan. App. 2d at 677. In that case, the Court of Appeals concluded that the parties in the second action were not substantially similar to the parties in the original action because the plaintiff was not suing in the same capacity—in the first action he sought to recover damages only for himself but in the second action he sought to recover damages for the benefit of his wife—and because in the original action there were five defendants and only one of those defendants was listed in the second action.

We disagree with the conclusion that all defendants in the first action have to be named in the second action. The critical point is that both Marsh and AIG were named in the MDL action and had notice of the potential claims against them. To require a plaintiff

asserting an individual action to name every defendant named in a class action, many of whom a plaintiff may have no complaint against, amounts to "court-ordered malicious prosecution." Westerbeke & McAllister, *Survey of Kansas Tort Law: Part I*, 49 U. Kan. L. Rev. 1037, 1136 (June 2001). Moreover, such a requirement would contravene the purpose of the application of K.S.A. 60-518 in the class action context. We conclude a plaintiff who files an individual action after a failure of a class action otherwise than on the merits can rely on K.S.A. 60-518 even if the plaintiff does not sue every defendant in the class action.

In this case, the second action is sufficiently similar to the MDL class action to have provided adequate notice to Defendants.

### e. *Plaintiff in First Action*

Finally, seemingly spurred by Seaboard's request that this court apply the plain language of K.S.A. 60-518, Defendants argue in their reply brief that K.S.A. 60-518 requires the plaintiff in both the original and the saved action to be the same and that Seaboard was not the plaintiff that commenced the original action.

This argument fails. First, Defendants raise this argument for the first time in their reply brief. " 'A new legal theory may not be asserted for the first time on appeal or raised in a reply brief. [Citation omitted.]' " *Mynatt v. Collis*, 274 Kan. 850, 868-69, 57 P.3d 513 (2002) (quoting *Wood v. Groh*, 269 Kan. 420, 434, 7 P.3d 1163 [2000]). Moreover, even in raising this issue, Defendants do not dispute that Seaboard was a putative plaintiff of the MDL action. This court has already determined that a putative class plaintiff qualifies as a plaintiff under K.S.A. 60-518. *Waltrip*, 234 Kan. at 1064.

### CONCLUSION

In both *American Pipe* and *Crown, Cork & Seal*, the United States Supreme Court emphasized the necessity of balancing the competing policies of encouraging economy of litigation through class actions guaranteeing fairness to defendants through notice of claims and barring claims of plaintiffs who have slept on their rights. This court echoed those concerns in *Waltrip*. These policy

considerations and the plain language of K.S.A. 60-518 support the district court's conclusion in this case. Seaboard has satisfied the requirements of the Kansas saving statute, and its action against Defendants was timely filed.

Affirmed.

NUSS, C.J., and MORITZ, J., not participating.

ROGER L. GOSSARD and FRANK J. YEOMAN, JR., District Judges, assigned.